David MUDGETT, et al.

v.

Barbara MARSHALL, et al.

Supreme Judicial Court of Maine.

Argued March 20, 1990.
Decided May 1, 1990.

Thomas F. Monaghan, Kevin G. Libby (orally), and Kim Anderson True, Monaghan, Leahy, Hochadel & Libby, Portland, for Mudgett.

John N. Kelly and Graydon G. Stevens (orally), Kelly, Remmel & Zimmerman, Portland, for Kimball.

Robert A. Cohen, Cohen & Cohen, Portland, for Leavitt.

Thomas A. Cox and Joel C. Martin (orally), Petrucelli, Cox & Martin, Portland, for Marshall.

Frederick C. Moore and James C. Hunt (orally), Robinson, Kriger, McCallum & Greene, P.A., Portland, for P.I.E.

Robert F. Hanson and James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for Megquier & Jones.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

This appeal involves five cases that were consolidated for trial.[1] The separate actions all arose out of an accident that occurred on August 31, 1981 when two steel frames collapsed during the erection of a chip storage building at the paper plant of S.D. Warren in Westbrook. Two steelworkers, Loren Kimball and Brian Leavitt, died as a result of the accident and a third worker, David Mudgett, was seriously injured. Mudgett and the personal representatives of the estates of Kimball and Leavitt each brought separate actions against Paper Industry Engineers, Inc. (PIE), Megquier & Jones Corp. (Megquier), and William H. Marshall, d/b/a William H. Marshall Associates (Marshall),[2] alleging that the negligence of defendants in their respective roles in the design of the building caused the collapse and further alleging that Megquier was vicariously liable for Marshall's negligence. By its October order, the trial court consolidated all the cases for pretrial and discovery purposes. By its December 31, 1987 order, the court consolidated all the cases for trial.

A jury trial of the consolidated actions commenced on May 9, 1988 in the Superior Court (Cumberland County, *Wernick, A.R. J.*). The court denied the motions for directed verdicts made by each defendant at the close of the plaintiffs' cases. At the close of all the evidence, the court denied Marshall's motion for directed verdicts but granted PIE's motion for directed verdicts in its favor. The court granted Megquier's motion for directed verdicts in its favor on any issue concerning its independent negligence but reserved ruling on the issue of Megquier's vicarious liability for the negligence of Marshall. The cases were presented to the jury on the issue of whether Marshall was negligent and, if so, whether this negligence proximately caused the injuries suffered by the respective plaintiffs. By a special verdict form the jury found the legal cause of the plaintiffs' injuries to be Marshall's negligent failure to design steel to meet the specifica-

---

1. The separate complaints are as follows:

   *David Mudgett v. William Marshall and Megquier & Jones*, CV-82-10

   *David Mudgett v. Paper Industry Engineers, Inc.*, CV-85-459

   *Mary Kimball, individually and as personal representative of the Estate of Loren Kimball, deceased, and as next friend of Bradley Kimball, Laura Kimball, Emily Kimball, Amanda Kimball and Rebecca Kimball, infants v. William Marshall and Megquier & Jones*, CV-82-40

   *Mary Kimball, individually and as personal representative of the Estate of Loren Kimball, deceased, and as next friend of Bradley Kimball, Laura Kimball, Emily Kimball, Amanda Kim-*

   *ball and Rebecca Kimball, infants, v. Paper Industry Engineers, Inc.*, CV-85-436

   *Kay Leavitt, as personal representative of the Estate of Brian Leavitt, deceased, and David Leavitt v. William Marshall and Megquier & Jones*, CV-82-317

   The Leavitts had also filed a complaint against Paper Industry Engineers, Inc., but this action was settled prior to trial and is not at issue in this appeal.

2. William H. Marshall died during pendency of the action. Barbara Marshall, as personal representative of his estate, was substituted as defendant.

tions of the structure, thereby creating an unreasonable danger of injury to the plaintiffs engaged in erecting the structure that could not be eliminated, overcome or avoided by the erector's exercise of reasonable care. The jury awarded damages to each of the plaintiffs. Following the jury's verdicts against Marshall, the court directed verdicts in favor of Megquier on the issue of its vicarious liability. The court denied Marshall's motion for judgments notwithstanding the verdicts. All the plaintiffs appeal from the judgments directing verdicts in favor of Megquier; Mudgett and Kimball appeal from the judgments directing verdicts in favor of PIE. Marshall and Megquier cross-appeal from the judgments entered against Marshall.[3] We find no error in the record and affirm the judgments.

## I

■ As a preliminary matter, PIE challenges the timeliness of the appeals of Mudgett and Kimball from the judgments entered on the directed verdicts in favor of PIE on the ground that the appeal was not filed within thirty days after the entry of the judgments. PIE argues that although the various actions were consolidated for trial, these judgments created final judgments in separate actions subject to the timeliness requirements for appeals mandated by M.R.Civ.P. 73. We disagree.

■ PIE does not, nor in view of the circumstances giving rise to these cases could it, challenge the propriety of the trial court's order consolidating all the actions for trial pursuant to M.R.Civ.P. 42. Implicit in any order consolidating cases for trial is the court's consideration of the least costly and most speedy means to secure a trial on the merits of the various cases as well as the most economical expenditure of judicial resources. When the trial court orders consolidation of separate actions for trial, these same considerations prevail in treating those actions as remaining consolidated for purposes of appeal. Here, the trial court did not rule on Marshall's mo-

tion for judgments notwithstanding the verdict until August 10, 1988. Each of these plaintiffs filed a notice of appeal within thirty days after the entry of the court's order denying Marshall's motion. We hold that Mudgett and Kimball complied with the time requirements for filing a notice of appeal set forth in M.R.Civ.P. 73. *See also Kittery Electric Light Co. v. Assessors of Town of Kittery,* 219 A.2d 744, 746 (Me.1966) (procedural unity ends at conclusion of trial when no formal order of consolidation but simply mutual understanding among parties and court that cases be tried together).

## II

Mudgett and Kimball contend that the trial court erred in granting PIE's motion for directed verdicts in its favor, and all the plaintiffs contend that the trial court erred by granting Megquier's motion for directed verdicts in its favor. They argue that there was sufficient evidence to support a jury finding that PIE and Megquier were both negligent in their design review responsibilities and that such negligence was a proximate cause of the plaintiffs' injuries. Further, the plaintiffs contend that there was sufficient evidence before the jury to find Megquier vicariously liable for the negligence of Marshall. When reviewing the propriety of granting a defendant's motion for a directed verdict in its favor, we consider the evidence and every justifiable inference from that evidence in the light most favorable to the plaintiff to determine whether by any reasonable view of the evidence a jury verdict for the plaintiff could be sustained. *Baker v. Mid Maine Medical Center,* 499 A.2d 464, 466–67 (Me. 1985); *Packard v. Central Maine Power Co.,* 477 A.2d 264, 267 (Me.1984); *Poirier v. Hayes,* 466 A.2d 1261, 1263 (Me.1983).

The record reveals that the collapsed chip storage building was part of a larger building project undertaken by S.D. Warren. S.D. Warren acted as its own general contractor and subcontracted with other

---

**3.** Megquier cross-appeals to preserve all grounds of appeal pertaining to Marshall, arguing that a determination that Marshall had no liability to the plaintiffs would render unnecessary any resolution of Megquier's vicarious liability.

companies for portions of the project. It contracted with PIE to be the engineering consultant for the project. PIE designed the foundation for the chip storage building, decided on the general shape of the building and prepared the bid specifications for the building. By a bid package sent to several potential bidders, S.D. Warren requested proposals for the design, fabrication and erection of a structural steel building in the shape of a modified A-frame. S.D. Warren contracted with Megquier for the design and fabrication of the structural steel to·be used in the construction of the building after deciding to have Cianbro, Inc., its major contractor on the project, erect the building. Megquier subcontracted to Marshall the design of the steel members to be used in the building. After the collapse of the frames, Marshall discovered that he had made ¨computational errors in calculating the necessary size of certain of the building's steel structural members.

■ Our review of the record discloses that the trial court properly determined that the plaintiffs failed to offer sufficient evidence to sustain a jury verdict that either PIE or Megquier had a duty to review Marshall's design computations to detect any arithmetic errors. The· trial court properly granted directed verdicts in favor of PIE and Megquier on the plaintiffs' claims that the negligent review of Marshall's design drawings by PIE and Megquier was a proximate cause of the injuries suffered by the plaintiffs.

■ We also find no merit in the plaintiffs' argument that under the provisions of *Restatement (Second) of Torts* §§ 414 & 416 there was sufficient evidence for a jury to find Megquier vicariously liable for Marshall's negligence by reason of the control retained over Marshall's work or the peculiar risk to others created by Marshall's computations. The general principle is well established that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servant. *Restatement (Second) of Torts* § 409 (1965). The record discloses that there was no evidence that Megquier controlled Marshall's day-to-day design work, his "methods" or the "operative detail" involved in Marshall's design of the structural steel. *See Restatement (Second) of Torts* § 414 comment c (1965).[4] Nor is the "peculiar risk" exception to the general principle of an employer's non-liability applicable in the present case. Section 416 of *Restatement (Second)* states that an employer may be held vicariously liable for work done by an independent contractor if "the employer should recognize as likely" that the work will "create during its progress a peculiar risk of physical harm to others unless special precautions are taken...." Section 413 comment b defines "peculiar risk" as a "special risk[ ], peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions" and a "special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions." This definition makes clear that section 416 refers to a peculiar danger while the independent contractor's work is in progress. As pointed out by Megquier, there was no danger to anyone while Marshall made his arithmetic calculations, nor is the making of such calculations peculiarly dangerous in itself.

The plaintiffs also rely upon section 429, which addresses the liability of the employer of an independent contractor to perform services for another that are accepted in the reasonable belief that the services are being rendered by the employer. Megquier

---

4. *Restatement (Second) of Torts* § 414 comment c provides, in pertinent part:

   [I]t is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

properly notes that this argument was not presented to the trial court, and, in any event, there is substantial evidence in the record that S.D. Warren knew that Marshall would design the structural steel to be used in the building. The trial court properly granted directed verdicts in favor of Megquier on the plaintiffs' claims that Megquier was vicariously liable for any negligence of Marshall.

### III

By their cross-appeals, Marshall and Megquier contend that the trial court erred by denying Marshall's motions for directed verdicts and for judgments notwithstanding the verdict. They argue that there was no evidence that Marshall's design of the structural steel to be used in the building was a proximate cause of the collapse and that as a matter of law Marshall owed no duty to the employees of Cianbro who were engaged in the erection of the building. We disagree.

In *Cyr v. Michaud,* 454 A.2d 1376 (Me. 1983), we clearly set forth our standard for reviewing the denial of motions for a directed verdict and for a judgment notwithstanding the verdict: "[W]e must determine whether the verdict can be sustained by any reasonable view of the evidence, including all justifiable inferences to be drawn therefrom, taken in the light most favorable to the plaintiff, the party in whose favor the verdict was rendered." *Id.* at 1380. The judgments in favor of the plaintiffs must stand unless clearly erroneous. M.R.Civ.P. 50(c).

■ Although the expert evidence presented to the jury on the issue of causation was contradictory, our review of the record discloses that the jury rationally could have found the following facts. After the collapse of the structure, William Marshall discovered that he had made computational errors while calculating the necessary sizes of certain steel members to be used in the erection of the building. In consequence of William Marshall's arithmetical errors in applying the formula he had chosen to determine the size of rafter beams, his design specifications called for WF36 × 150 rafter beams instead of WF36 × 230 rafter beams. WF36 × 230 rafter beams have greater lateral stiffness and an increased resistance to buckling. The WF36 × 150 rafter beams would not adequately meet the design specifications without sixteen permanent knee braces to provide the necessary strength and stability. Only two knee braces were provided by William Marshall. The jury rationally could find that the erector's judgment as to what precautions were necessary in erecting such a building would legitimately be affected by the premise implicit in Marshall's design that once erected it would be structurally sound under Maine conditions. Based on this evidence the jury rationally could find that it was more probable than not that the negligence of William Marshall was a proximate cause of the collapse of the structure resulting in the death of Loren Kimball and Brian Leavitt and the injuries to David Mudgett. Accordingly, we hold that the trial court properly denied Marshall's motions for directed verdicts and for judgments notwithstanding the verdict.

■ Marshall and Megquier also contend that as a matter of law Marshall owed no duty of reasonable care to the Cianbro employees engaged in the erection of the building. They rely on *Welch v. Heat Research Corp.,* 644 F.2d 487 (5th Cir.1981) where that court affirmed the rule in Texas that the contractor erecting a structure is responsible for the stability of the structure during construction, regardless of design defects affecting that stability. This is contrary to the general rule that the duty of an architect or engineer is not limited to the employer but may extend, without privity of contract, to other persons lawfully on the premises, including construction workers injured as a result of a defect in the design of the building or its component parts. *See, e.g., Fox v. Stanley J. How and Associates, Inc.,* 309 N.W.2d 520, 523 (Iowa 1981); *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 913 (Iowa 1975); *Geer v. Bennett,* 237 So.2d 311, 316 (Fla.App.1970); *Clemens v. Benzinger,* 211 A.D. 586, 207 N.Y.S. 539, 543 (1925); 5

Am.Jur.2d *Architects* § 25. Although we have not previously addressed this precise issue, we agree with the reasoning of the trial court

> that there was a status relationship existing between Marshall as the designer of the steel to be used in the structure that could generate impact on [it] as it was in the process of being erected ... [imposing] the duty on him that he refrain from negligence in [the] preparation or in formulating a design ... that would create unreasonable dangers of injury to those engaged in the process of erecting the structure.

*See also Adams v. Buffalo Forge Co.*, 443 A.2d 932, 936–39 (Me.1982) (tort obligations are created by status relationships independent of consent and are not precluded by lack of privity). On the facts of this case we hold that William Marshall's duty to exercise reasonable care in the design of the structural steel to be used in the erection of the wood chip storage warehouse extended to David Mudgett, Loren Kimball and Brian Leavitt.

The entry is:

Judgments affirmed.

All concurring.