**Leslie LeFAY et al.**

v.

**Morton COOPERSMITH et al.**

Supreme Judicial Court of Maine.

Argued May 7, 1990.
Decided June 5, 1990.

William Ferm, Ferm & McSweeney, Ellsworth, Francis J. Hallissey (orally), Machias, for plaintiffs.

Diane Sleek (orally), Asst. Atty. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

GLASSMAN, Justice.

Leslie and Nellie LeFay, individually, and Leslie LeFay, as the personal representative of the estate of Clayton LeFay, deceased, appeal from a judgment entered in the Superior Court (Knox County, *Chandler, J.*) on a jury verdict awarding the LeFays total damages in the amount of $5,000 against the defendants, Morton Coopersmith and Juanita Wilkerson. The LeFays contend that the trial court erred by directing a verdict in favor of Coopersmith on their civil rights claim against him pursuant to 42 U.S.C.A. § 1983 (West 1981) and by refusing to reinstate that claim and by denying their motion for an additur to the damages awarded or, in the alternative, for a new trial. By their cross-appeal, the defendants contend that the court (*Smith, J.* and *Silsby, J.*) erred in the disposition of the defendants' motion seeking sanctions for the LeFays' failure to comply with the time limits set forth in 24 M.R.S.A. § 2903-A(1).[1] We find no error in the record and affirm the judgment.

## I

This action arises from the facts surrounding the death of the LeFays' 24-year-old son Clayton, an inmate of the Maine State Prison at Thomaston. The jury heard the following evidence: Coopersmith was the prison physician, and Wilkerson was the physician's assistant who worked with him at the prison. Clayton visited the prison medical department on Saturday, November 16, 1985, complaining of neck and shoulder pain. The duty nurse gave him a pain medication and a compress and told him to see the doctor on Monday. On Monday, November 18, Clayton visited Coopersmith and repeated his complaint of Saturday, stating that he had been lifting weights the previous Thursday when he felt pain at the back of his head and neck. Coopersmith examined Clayton, found spasms in his shoulder muscles, prescribed various palliative treatments and told him to cease lifting weights. Clayton returned to the medical department on Thursday, November 21, and was examined by Wilkerson. She noted that he had pain in the occipital area radiating to the temples, muscle spasm, dizziness and nausea. She changed his medication, gave him a cervical collar and told him not to work for a few days.

On Friday, November 22, Clayton again appeared at the medical department complaining of persistent pain. Coopersmith performed a partial neurological examination with normal results and found Clayton's range of motion to be good. He ordered hot showers and pain medication and made arrangements for an x-ray of Clayton's cervical spine. During Saturday, November 23, and Sunday, November 24, Clayton frequently visited the medical department complaining to the nursing staff of persistent neck pain and demanding to be transferred to a hospital. The nurses noted that he had not been resting as ordered by Coopersmith and had refused his pain medications. On Sunday morning, the nursing staff confined him to his cell to enforce bed rest until his next examination by Coopersmith.

On Monday, November 25, Coopersmith called Clayton to the medical department, advised him that the x-ray results were negative, gave him more medication and ordered the continuance of rest confinement for one week. On Tuesday, November 26, a nurse visited Clayton in his cell after regular medical department hours. Clayton was lying in a fetal position but sat up without difficulty. When reaching to-

---

1. 24 M.R.S.A. § 2903-A, repealed by P.L.1989, ch. 361, § 9, after the entry of judgment in this case, provided that within 90 days after filing a complaint for professional negligence, the plaintiff would serve the defendant with a list of plaintiff's expert witnesses to be called at trial on issues of liability and proximate causation, the subject matter of the experts' testimony, the substance of facts and opinions of their testimony and a summary of the grounds for each opinion.

ward the bars, he cried out, clutched his head in his hands and complained of severe pain. The nurse noted that Clayton refused his prescribed medication because it nauseated him and that he was pale and weak, but did not contact anyone with regard to these observations.

On Wednesday, November 27, Coopersmith and Wilkerson performed a neurological examination of Clayton. Although the results were normal, Coopersmith referred Clayton to Robert Stein, a neurologist at Pen Bay Medical Center. The neurological examination of Clayton performed by Stein later that day yielded results within normal limits. However, a CAT scan disclosed a right temporal brain abscess. Clayton was immediately transported to Maine Medical Center where the abscess was surgically drained. Following temporary improvement, his condition deteriorated, and after a second surgical procedure, Clayton died on December 3, 1985.

At the close of the LeFays' case, the trial court granted Coopersmith's motion for a directed verdict in his favor on the LeFays' claim, pursuant to 42 U.S.C. § 1983, that Coopersmith had violated Clayton's civil rights. At the close of all the evidence, the trial court denied the LeFays' motion to reinstate that claim and submit it to the jury for its consideration. The jury found the defendants negligent and awarded the LeFays total damages in the amount of $5,000. The court denied the LeFays' motion for additur or a new trial, and this appeal followed.

## II

The LeFays first contend that because there was sufficient evidence in the record to allow a jury to find that Coopersmith was deliberately indifferent to Clayton's serious medical needs the trial court erred in refusing to submit to the jury their claim that Coopersmith had violated Clayton's civil rights. They argue that Clayton's confinement to his cell was indicative of Coopersmith's desire to keep Clayton from the prison medical area, and an entry in Clayton's medical chart that he had kicked a radiator shield and had walked and moved without difficulty was further evidence of Coopersmith's deliberate indifference to Clayton's obvious distress.

We have repeatedly stated that when we review the propriety of the trial court having granted a directed verdict in favor of a defendant, we consider the evidence and every justifiable inference from that evidence in the light most favorable to the plaintiff to determine whether any reasonable view of the evidence would sustain a jury verdict for the plaintiff. *Mudgett v. Marshall,* 574 A.2d 867 (Me.1990). The LeFays contend that because at the close of all the evidence in this case they moved for a reconsideration of the directed verdict for Coopersmith, we are to weigh all the evidence adduced by either party that may relate to this claim. Assuming, without deciding, that the LeFays are entitled to such consideration, we hold that the trial court properly granted Coopersmith's motion for a directed verdict in his favor and properly denied the LeFays' request for reinstatement of their civil right claim against Coopersmith.

In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court held that although deliberate indifference by prison personnel to a prisoner's serious illness or injury constitutes cruel and unusual punishment prohibited by the eighth amendment, not every claim of a prisoner that he has received inadequate medical treatment is such a violation. The Court stated that

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Id.* at 105–106, 97 S.Ct. at 292 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). In the instant case, the record discloses no

evidence that Coopersmith confined Clayton to his cell to keep him from the prison medical area. To the contrary, the medical records disclose that the initial confinement was ordered on Sunday, November 24, by an unidentified nurse "to allow rest until seen by Dr." and continued the next day by Coopersmith to allow Clayton "to rest neck." Nor do we find any merit in the LeFays' second argument that the notation in Clayton's medical record on November 27, the date he was last examined by Coopersmith and transferred to Pen Bay Medical Center, that Clayton "walked and moved without difficulty and kicked a radiator shield" evidenced Coopersmith's deliberate indifference to Clayton's medical needs.

### III

■ The LeFays also contend that the trial court erred by denying their motion for an additur to the verdict or, in the alternative, a new trial on the ground that the damages awarded by the jury were inadequate.

The law is well established that the assessment of damages is the sole province of the jury, and the amount fixed must stand unless it is apparent from the record that the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact. *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 599 (Me.1975). We have noted that the trial court is in a far better position than an appellate court to make this determination. *Arel v. Poirier*, 533 A.2d 1285, 1286–87 (Me.1987). The trial court's denial of a motion for additur to a verdict or a new trial on the ground of inadequate damages will be reversed only if we determine that the decision was a "clear and manifest abuse of discretion." In reaching our determination, we consider the evidence in the light most favorable to the non-moving party, deferring to the jury on the issues of credibility. *Id.* at 1287.

On the issue of damages, the jury heard evidence concerning the nature and duration of pain consciously suffered by Clayton; that this pain would have been re-

duced by an earlier referral to a neurologist; that an earlier diagnosis of Clayton's condition would not have prevented his death; and that the amount of Clayton's funeral expenses was $3,000. The LeFays testified briefly as to their relationship with Clayton. There was also evidence that on his admission to the Maine Medical Center Clayton had stated, "I have no family." In denying the LeFays' motion, the trial court properly applied the standard set forth in *Poulette*. Giving deference to any finding the jury may have made as to the credibility of the evidence presented on this issue, we find no clear and manifest abuse of discretion in the trial court's denial of the LeFays' motion.

### IV

■ With regard to the defendants' cross appeal, we note that 24 M.R.S.A. § 2903–A(1) provided no sanctions for a plaintiff's noncompliance with its time limitations. Section 2903–A(3) authorized the court to extend time periods established in the section for good cause and defined good cause, *inter alia*, as "[a]ny other cause the court determines to require extension ... in the interest of justice." We also note that no time limit is provided in this section within which a plaintiff must seek an extension. Here, after a hearing on the defendants' motion, the court (*Smith, J.*) imposed a sanction on the LeFays for noncompliance with section 2903–A(1). The LeFays' motion for reconsideration was submitted to the court on the basis of memoranda by the parties. After reviewing the file and memoranda, the court vacated its previous order for the purpose of allowing the parties to address the issue of good cause for an extension of time to comply with section 2903–A(1). After a hearing on the LeFays' motion for an extension and the defendants' renewed motion for sanctions, the court (*Silsby, J.*), "in the interest of justice," granted the LeFays' motion and denied the motion of the defendants. On the record before us, we cannot say that the trial court erred in its disposition of these preliminary motions.

The entry is:

Judgment affirmed.

All concurring.