STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
YORK, ss.                                         DOCKET NO: CV-09-046
                                                  GAB-YOR- 9/21/2010


ADAM EMMONS,

                Plaintiff,

        v.                                        ORDER


HOMETOWN BUILDERS, LLC,
GEORGE DUBOIS, JORNAT, LLC,
and FRANKLIN SANBORN,

                Defendants


        Plaintiff Adam Emmons filed this action against defendants Hometown Builders,

LLC, George Dubois, Jornat, LLC, and Franklin Sanborn, alleging that their negligence

caused him to fall from a roof while constructing a home. The defendants request

summary judgment.

## BACKGROUND

        Defendant Franklin Sanborn and his wife, Deborah L. Sanborn, own property at

28 Brown Brook Road in Cornish, Maine. (Jornat Supp. S.M.F. ¶ 3.) They are also the

sole members of Jornat, LLC, a Maine limited liability company organized in 2006.

(Jornat Supp. S.M.F. ¶ 1.) Jornat is managed by Deborah Sanborn, and owns a gravel pit

adjacent to the Sanborn's property at 28 Brown Brook Road. (Jornat Supp. S.M.F. ¶¶ 1–

4.) It is in the business of selling gravel and plowing snow in the winter. (Emmons

Add'l S.M.F. ¶ 27.)[1]

---

[1]     Mr. Emmons appears to have filed the same Additional Statement of Material Facts in opposition
to each defendant's motion for summary judgment.

At the time of the incident giving rise to this litigation, the Sanborns were in the process of building a house at 28 Brown Brook Road. Mr. Sanborn, who has been involved in construction and worked as a general contractor for over fifty years, listed himself as the general contractor and owner on the building permit filed with the Town of Cornish. (Emmons Add'l S.M.F. ¶¶ 9–10.) He excavated the site himself, and the Sanborns purchased all of the building materials themselves. (Sanborn Add'l S.M.F. ¶ 1; Emmons Add'l S.M.F. ¶ 13.) Mr. Sanborn hired contractors to pour the foundation and install the plumbing, electrical work, and heating. (Sanborn Add'l S.M.F. ¶2.) He also contracted defendant Hometown Builders, LLC, to frame the house, roof it, and install siding, doors, and windows. (Sanborn Add'l S.M.F. ¶ 1.) Defendant George Dubois is a member of Hometown Builders. (Emmons Add'l S.M.F. ¶ 18.) Mr. Sanborn participated in the framing and roofing work, but the extent of his involvement is disputed. (*Compare* Sanborn Add'l S.M.F. ¶¶ 3, 5–6 *with* Emmons Add'l S.M.F. ¶ 12 *and* Dubois Dep. at 48.)

Hometown Builders, acting through Mr. Dubois, contracted with plaintiff Adam Emmons to assist with roof construction. (Emmons Add'l S.M.F. ¶¶ 2, 25.) Mr. Emmons began to work on April 14, 2008, arriving on site at approximately 8:00 am. (Emmons Add'l S.M.F. ¶¶ 3, 28.) It was his first time at the property, and he was introduced to Mr. Sanborn. (Emmons Add'l S.M.F. ¶ 4; Sanborn Supp. S.M.F. ¶ 2.) The parties dispute what happened next. The defendants testify that they told Mr. Emmons not to go up on the roof because they could see frost and it would be slippery. (Sanborn Supp. S.M.F. ¶ 3.) Mr. Emmons responded that he could see that the roof was slippery, but he grabbed a ladder and climbed up onto the roof anyway. (Sanborn Supp. S.M.F. ¶¶ 3–4.) Mr. Emmons claims that shortly after arriving, Mr. Dubois directed him to finish installing ice and water shield on the roof. (Emmons Add'l S.M.F. ¶ 29.) He denies that

2

either defendant warned him not to go on the roof that morning. (Emmons Add'l S.M.F. ¶ 29.)

Regardless of whether the defendants warned Mr. Emmons or not, when the parties finished speaking Mr. Dubois proceeded to the rear of the house to begin erecting staging. (Dubois S.M.F. ¶ 21.) Mr. Sanborn presumably accompanied him. After Mr. Dubois went to the back of the house, Mr. Emmons picked up a roll of ice and water shield and brought it too the roof. (Dubois S.M.F. ¶ 22.) Mr. Emmons had experience with roofing, and he noticed that there was no staging or other fall-protection device on the front of the house. (Emmons Add'l S.M.F. ¶¶ 30–32; Dubois S.M.F. ¶¶ 15, 25.) Though he had never gone onto a roof without the benefit of staging, he decided to so that day. (Dubois S.M.F. ¶¶ 23–24.)

Mr. Emmons climbed to the top of the roof and set down the roll of ice and water shield. (Dubois S.M.F. ¶ 27.) He could not see Mr. Dubois. (Dubois S.M.F. ¶ 26.) He went to straddle a valley in the roof, and then slipped and fell off the front side of the house. (Dubois S.M.F. ¶¶ 27–28; Emmons Add'l S.M.F. ¶ 30.) Mr. Emmons sustained several broken bones requiring multiple surgeries and extensive hospitalization. (Emmons Add'l S.M.F. ¶¶ 33–34.) Mr. Emmons does not know what caused him to slip and fall. (Sanborn S.M.F. ¶ 6; Emmons Dep. at 31.)

Mr. Emmons filed this complaint on February 19, 2009, seeking to hold Hometown Builders, LLC, George Dubois, Jornat, LLC, and Franklin Sanborn liable on a sole count of negligence. The defendants have each filed for summary judgment.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. An issue of "fact

3

exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179).

This action is premised solely on negligence. To recover for negligence, Mr. Emmons must show: (1) the defendants owed him a duty; (2) the defendants breached that duty; and (3) the breach proximately caused him injury. *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 14, 960 A.2d 1188, 1193. Each defendant claims that it did not owe Mr. Emmons any duty. Mr. Sanborn also argues that Mr. Emmons has failed to make a prima facie showing of proximate causation.

1.    Proximate Causation

Mr. Sanborn argues that Mr. Emmons has failed to make a prima facie showing of proximate causation between the lack of safety equipment and his injury. Because it has the power to resolve this litigation in its entirety, the argument regarding proximate causation will be addressed first.

The gist of Mr. Emmons's case is that the defendants breached a duty by failing to provide staging or other fall-prevention devices, and this lack of fall protection proximately caused his injuries. A negligent act proximately causes harm if it was (a) "a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." *Wing v. Morse*, 300 A.2d 491, 495–96 (Me. 1973). Mr. Sanborn analogizes this case to *Addy v. Jenkins, Inc.* and argues that Mr. Emmons has failed to make any showing that the alleged negligence proximately caused him harm. 2009 ME 46, 969 A.2d 935.

In *Addy*, the plaintiff was a roofing subcontractor working for the defendant. 2009 ME 46, ¶ 2, 969 A.2d at 937. The defendant had "erected three-story staging to be

4

used during the project ... [but] had not installed safety equipment, including rails, platforms, or ladders ...." *Id.* It was also not tied to the building on the side where the plaintiff was working. *Id.* One day the plaintiff was working on the roof. *Id.* ¶ 11, 969 A.2d at 939. He recalled stepping "off the roof to begin his descent to the ground, that he fell to the ground, and that he woke up on the ground having suffered serious injury." *Id.* The evidence showed that he had fallen from the staging. *Id.* However, he could not remember how he fell or "whether his fall was connected in any way to the absence of a ladder, platform, or railing on the staging," which were the facts establishing the defendant's breach of duty. *Id.* The trial court granted the defendant summary judgment because there was "no independent evidence that the failure to complete the staging was negligent or that the failure to complete the staging was a direct and proximate cause of [the] plaintiff's injuries." *Addy v. Jenkins,* 2007 Me. Super. LEXIS 132, * 16 (June 25, 2007).

On appeal, the Law Court affirmed. The Court found that the plaintiff had "failed to establish a connection between any defect in the staging and the injury he suffered." 2009 ME 46, ¶ 14, 969 A.2d at 939. He had "presented evidence of only *from where* he fell, rather than *how* he fell." *Id.* (emphasis in original). The Court stated that "[t]he mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the possibilities are evenly balanced, a defendant is entitled to a judgment." *Id.* ¶ 12, 969 A.2d at 939 (quoting *Houde v. Millett,* 2001 ME 183, ¶ 11, 787 A.2d 757, 759) (quotations omitted). On the facts presented, the Court held that "[a]ny finding that [the plaintiff's] fall was caused by a defect in the staging would be based on speculation or conjecture." *Id.* ¶ 15, 969 A.2d at 940.

Mr. Emmons distinguishes his case from *Addy* by stressing that he remembers how he fell. In *Addy,* the plaintiff alleged that the missing elements of the scaffolding

caused him to fall, but he could not offer any evidence. That plaintiff did not allege that the scaffolding failed to prevent a fall caused by some other factor, and other forms of fall protection were not mentioned. This case presents a scenario with a complete lack of fall protection, including but not limited to scaffolding. Where *Addy* involved a claim that defective scaffolding caused the plaintiff to fall, Mr. Emmons's claim is that he slipped and there was nothing to arrest his fall.

Mr. Emmons knows that his fall was caused by a slip on the roof. The purpose of a fall-protection device is to prevent such slips from resulting in complete falls that can result in catastrophic injury. Here there were no such safety devices. Mr. Emmons slipped on the roof, fell to the ground, and suffered such catastrophic injuries. Assuming that the defendants owed him a duty, and assuming that the failure to provide fall protection breached that duty, it is reasonable to infer that the lack of fall protection was a substantial factor in bringing about Mr. Emmons's injury where his injury is exactly the sort that fall protection is designed to prevent. He has made his prima facie showing of proximate causation between the lack of safety equipment and his injury.

2.    Jornat, LLC's Motion for Summary Judgment

Jornat rightly contends that it had no legal connection to the events of April 14, 2008. Jornat did not own the property, contract with Hometown Builders, or contract with Mr. Emmons. (Jornat Supp. S.M.F. ¶¶ 4, 6–7.) There is no evidence that Jornat had any role in any aspect of the Sanborns home-construction project that could impose a duty to the plaintiff. Mr. Emmons argues that there is considerable ambiguity about who was responsible for the project, and that it could have been Jornat. He supports his theory by arguing that the distinction between Jornat's business and Mr. Sanborn's business is not clear. In his opposition motion, Mr. Emmons cites a portion of Mr.

Sanborn's testimony in which he expresses some confusion about whether certain tools and equipment are owned by Jornat or by Mr. Sanborn personally.

There is no indication that Mr. Sanborn was acting as Jornat's agent at the time of the fall. Instead, Mr. Emmons appears to be advancing an argument for reverse veil piercing, by which Mr. Sanborn's corporate entity may be held liable for his personal actions. The corporate veil of an LLC can be pierced if the plaintiff establishes that: "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 43, 980 A.2d 1270, 1280 (citing *Advanced Constr. Corp. v. Pilecki*, 2009 ME 84, ¶ 10, 901 A.2d 189, 194–95; *State v. Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200, 207). "Whether the corporate form should be disregarded involves questions of fact," and relevant factors include whether the defendant observed the corporate formalities, whether the corporation was adequately capitalized, the degree of control the defendant exercised over the corporate entity, and whether the defendant or corporation is bankrupt or insolvent. *Id.; Advanced Constr. Corp.*, 2009 ME 84, ¶ 12, 901 A.2d at 189; *Weinschenk*, 2005 ME 28, ¶ 20, 868 A.2d at 207.

The only evidence offered to show that Mr. Sanborn abused the corporate form is a brief verbal exchange in which he expresses uncertainty about the ownership of some equipment, and indicates that he is paid through social security rather than through Jornat. (Pl.'s Opp. to Jornat's Motion at 6–7.) This colloquy is not referenced in any party's statement of material facts, so the court may disregard it. M.R. Civ. P. 56(h)(4). If the court were to take it into account, however, it would not make a difference. The evidence is insufficient to show abuse as a matter of law. More importantly, the plaintiff has not shown that honoring Jornat's existence as an entity separate and apart from Mr. Sanborn would be unjust under the circumstances. Again, there is no evidence that

7

Jornat had any involvement in the construction at 28 Brown Brook Road, or that it owed any duty to Mr. Emmons. Jornat's motion for summary judgment is granted.

3.    Hometown Builders, LLC and George Dubois's Motion for Summary Judgment

Defendants Hometown Builders, LLC, and Mr. Dubois contend that they did not owe Mr. Emmons a duty of care because they were subcontractors who lacked control over his work. They contend that ultimate responsibility lies with Mr. Sanborn, who they believe was the general contractor. Mr. Emmons contends that the defendants exercised control over him and his work, and contests their characterization of his employment status.

The existence and scope of a duty is initially a question of law. *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992). However, a duty in tort arises from "the status relationship between the parties." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938 (Me. 1982). This status relationship is in turn predicated on the facts. *Dir. of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1301 (Me. 1987). The general rule is that "an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servant." *Mudgett v. Marshall*, 574 A.2d 867, 870 (Me. 1990) (citing Restatement (Second) of Torts § 409 (1965)). An independent contractor retains control over the manner in which he performs his work, and he "is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it." Restatement (Second) of Torts § 409 cmt. b (1965).

Courts consider eight factors when determining whether a party is an employee or an independent contractor:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
> (2) independent nature of his business or his distinct calling;
> (3) his employment of assistants with the right to supervise their activities;

8

(4) his obligation to furnish necessary tools, supplies, and materials;

(5) his right to control the progress of the work except as to the final results;

(6) the time for which the workman is employed;

(7) the method of payment, whether by time or by job;

(8) whether the work is part of the regular business of the employer.

*Legassie v. Bangor Publishing Co.*, 1999 ME 180, ¶¶ 6, 741 A.2d 442, 444 (citing *Lewiston Daily Sun v. Hanover Ins. Co.*, 407 A.2d 288, 292 (Me. 1979)). Of these, the most important factor is the degree of control retained by the employer. *Id.* ¶¶ 6, 8, 741 A.2d at 444–45. However, "the right to control the 'details of the performance,' present in the context of an employment relationship, must be distinguished from the right to control the result to be obtained, usually found in independent contractor relationships." *Id.* ¶ 6, 741 A.2d at 444 (citing *Lewiston*, 407 A.2d at 292).

Apart from determining employment status, the element of control can also create an independent duty in the employer of an independent contractor. *Mudgett*, 574 A.2d at 870 (citing Restatement (Second) of Torts § 414). If an employer retains or in fact exercises supervisory control over the day-to-day "manner," "methods," or "operative detail" of the contractor's work, the employer must exercise that control with reasonable care. Restatement (Second) of Torts § 414 cmt. c (1965); *see Mudgett*, 574 A.2d at 870. Where the employer's supervision renders the contractor "not entirely free to do the work in his own way," the justification for imposing ultimate responsibility on the contractor is destroyed. *Id.; see* Restatement (Second) of Torts § 409 cmt. b (1965). A mere "general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations," will not create a duty.

The degree of the defendants' control over Mr. Emmons remains a disputed fact. (Sanborn Add'l S.M.F. ¶¶ 8–9; Emmons Add'l S.M.F. ¶¶ 2, 25.) There is conflicting testimony regarding Mr. Emmons's employment arrangements and his interaction with

9

the defendants, and no written contract governing his relationship with the other parties is in evidence. It is impossible to determine from the record whether Mr. Emmons was an independent contractor or Hometown Builders' employee, or whether Mr. Dubois exercised operative control over him. The court cannot determine whether these defendants owed Mr. Emmons a duty of care, and summary judgment is inappropriate.

4.      Frank Sanborn's Motion for Summary Judgment

Mr. Sanborn did not directly hire Mr. Emmons to work on the home, so any duty he owed the plaintiff would have to arise through different means. Mr. Sanborn asserts that he had no duty to Mr. Emmons because he was merely a homeowner who did not exercise the degree of control required to make him liable as a general contractor. His argument is based primarily on *Hodgdon v. Jones*, 538 A.2d 281 (Me. 1988). In *Hodgdon*, a homeowner hired a number of contractors, including the plaintiff, to renovate his home. *Id.* at 282. The homeowner also hired his brother at an hourly wage to assist the carpenters. *Id.* He did not, however, hire a general contractor. *Id.* at 283. The plaintiff, an electrician, was injured when he fell through the floor of a closet because of a hidden defect. *Id.* at 282.

At trial the plaintiff attempted show that the homeowner had assumed the heightened duty of a general contractor, but the court rejected his argument as a matter of law. *Id.* On appeal, the Law Court upheld the trial court's decision. The Court wrote that "initially, the trial court . . . had to determine whether as a matter of law the duty of a homeowner was that of a general contractor or if the evidence would support a finding that either defendant had assumed the duties of a general contractor." *Id.* at 282–83. Where the undisputed facts showed that the homeowner was an out-of-state resident who had never worked on the renovation, was not occupying the house during

the renovation, was not providing day-to-day supervision, and had not hired a general contractor but instead entrusted the work to the independent subcontractors, the trial "court properly found that the homeowner" as a matter of law had not assumed the duty of a general contractor. *Id.* at 283. His brother was not a general contractor because he "had no authority to supervise the work or to engage or discharge the contractors." *Id.*

Mr. Sanborn contends that he, like the homeowner in *Hodgdon*, retained only the general rights of an employer over independent contractors and did not assume any liability for his contractor's negligence. *See Mudgett v. Marshall*, 574 A.2d 867, 870 n.4 (Me. 1990) (quoting Restatement (Second) of Torts § 414 cmt. c (1965)) (quotations omitted) (general rights employers hold over independent contractors do not rise to the level of control necessary to impose liability on the employer for the contractors' actions). This argument is contradicted by the facts.

Unlike the homeowner in *Hodgdon*, Mr. Sanborn had participated in the construction of his home, had been a general contractor for over fifty years, had listed himself as the general contractor on his building permit, was on site regularly to monitor the work being done, and retained full power to hire or fire his contractors. The precise degree of Mr. Sanborn's involvement and control remain in dispute, so the court cannot determine whether Mr. Sanborn assumed the duty of a general contractor as a matter of law. However, there is substantial evidence in the record that could lead a jury to conclude that Mr. Sanborn did retain control over his contractors' methods of work or operative details. Such control would be accompanied by a corresponding duty to ensure that his contractors took reasonable care to avoid causing physical injury.

Even if Mr. Sanborn did not owe a duty as an employer or general contractor he did owe Mr. Emmons a duty as a landowner. In *Hodgdon*, after the Court determined

11

that the homeowner did not owe the duty of a general contractor it stated that the real issue "was whether [he] had complied with the duty of a possessor of land to one lawfully present on his property to use ordinary care to ensure that the premises were reasonably safe and guard against all reasonably foreseeable dangers, in light of the totality of the circumstances." *Hodgdon*, 538 A.2d at 283. In that case a jury found that the homeowner had not breached that duty. *Id.* The same question has not yet been put to a jury in this case, but the question's existence makes it clear that Mr. Sanborn owed Mr. Emmons some duty of care. His motion for summary judgment is denied.

**The entry is:**

The court grants Jornat, LLC's motion for summary judgment because there is no evidence that it was connected to the home construction project giving rise to this case. The remaining three defendants' motions for summary judgment are denied.

DATE: 9/21/10

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
JAMES A. CLIFFORD, ESQ.
LAW OFFICE OF JAMES CLIFFORD LLC
4 MILK STREET
PORTLAND ME   04101

ATTORNEY FOR DEFENDANT FRANKLIN SANBORN:
LANCE E. WALKER, ESQ.
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR DEFENDANT JORNAT LLC:
DAVID R ORDWAY, ESQ.
SMITH ELLIOTT SMITH & GARMEY
PO BOX 1179
SACO ME   04072

ATTORNEY FOR DEFENDANTS HOMETOWN BUILDERS LLC & GEORGE DUBOIS:
THOMAS LAPRADE, ESQ.
LAMBERT COFFIN
PO BOX 15215
PORTLAND ME   04101-5215

12