2010 WY 31

Leonard SINGER, Appellant (Plaintiff),

v.

NEW TECH ENGINEERING L.P., Individually and through Vicarious Liability for New Tech Safety Limited, Appellee (Defendant).

No. S–09–0024.

Supreme Court of Wyoming.

March 22, 2010.

Representing Appellant: Mark L. Carman of Carman Law Office, P.C., Billings, Montana; and Cody L. Balzer of Balzer Law Firm, P.C., Loveland, Colorado. Argument by Mr. Carman.

Representing Appellee: Roger E. Shumate and James C. Worthen of Murane & Bostwick, LLC, Casper, Wyoming. Argument by Mr. Shumate.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] After suffering debilitating injuries while working on a drilling rig owned by Caza Drilling (Caza) in northeastern Wyoming, Leonard Singer brought a negligence case against New Tech Engineering (New Tech), the company who hired safety coaches to provide "safety services" on the rig. The district court granted New Tech's summary judgment motion, and denied Mr. Singer's partial summary judgment motion, absolving New Tech from any responsibility in Mr. Singer's injuries. We affirm the district court.

## ISSUES

[¶ 2] Leonard Singer lists the issues as follows:

A. Are there questions of material fact regarding whether Mr. Harrington was an employee/agent or independent contractor?

B. Does the Restatement (Second) of Torts § 429 impose liability upon New Tech regardless of the employment status of Mr. Harrington?

C. Is New Tech directly and vicariously liable by its assumption of affirmative duties of safety pursuant to its agreement with Caza, regardless of the employment status of Mr. Harrington?

D. Did New Tech undertake a non-delegable duty when it agreed to provide safety services for an ultra-hazardous undertaking rendering it directly and vicariously [liable] regardless of the employment status of Mr. Harrington?

New Tech recites the issues this way:

I. The district court properly found that Gary Harrington was an independent contractor and not an employee/agent.

II. The district court properly held that Restatement (Second) of Torts § 429 does not impose liability upon New Tech, even if Mr. Harrington is an independent contractor.

III. The district court properly found that Appellee New Tech Engineering did not assume any affirmative safety duties.

IV. The district court properly found that Appellee New Tech Engineering did not have a non-delegable duty.

## FACTS

[¶ 3] In 2002, it was Caza's practice to have safety coaches on rig sites. Customers of Caza wanted the coaches present and, wanting to satisfy their customers, Caza made sure the coaches were a fixture on the rig. Having previously experienced problems hiring insured safety coaches, Caza decided to hire its coaches through an engineering company that would provide the coach with liability insurance. Caza also wanted to maintain control over its safety program and decided that New Tech [1] would facilitate both wishes. New Tech was "primarily a placement service," as it provided Caza with three names of safety coaches, and Caza decided which person to hire.

[¶ 4] From the choices given to Caza by New Tech, Caza hired Gary Harrington [2] as

---

1. New Tech is a multi-functioning company comprised of different divisions—we note that the parties differ as to whether the proper party is New Tech Engineering or New Tech Safety. The district court reserved that issue for determination, but because it did not bear on the issues here, we will refer to the Appellee as "New Tech."

2. Harrington worked full-time, and exclusively, on rigs run by Caza for the entire period of time

its safety coach. The chain of command is not altogether clear, but Harrington believed that he worked under Caza's Health, Safety and Environmental Director, Harry Olds, although Olds believed Harrington supervised "himself." Nevertheless, Harrington received his orders and directions from Caza employees and reported to Caza supervisors. Caza decided where the safety coaches worked on a day-to-day basis and had the power to terminate the safety coaches. Although Harrington "checked in" with New Tech only every six to eight weeks, he received his paycheck through New Tech and was provided liability insurance by New Tech. Caza, however, retained the right to terminate the safety coaches by calling New Tech and requesting a new safety coach. New Tech would never terminate a safety coach; they would simply refrain from using that individual's services again.

[¶ 5] Harrington was on duty during Leonard Singer's shift on the Natrona County drilling rig on July 27, 2002. Singer, who was a Caza employee, was injured and rendered totally disabled while working on the rig. Singer filed suit against New Tech alleging that New Tech's actions (and inactions) contributed to his injuries. New Tech asserted that it had neither direct nor vicarious liability for Singer's injuries because it engaged Harrington as an "independent contractor" to perform the safety duties assigned to him by Caza. The district court agreed and granted New Tech's motion for summary judgment. The court also denied Singer's partial summary judgment motion, absolving New Tech from any responsibility by application of the independent contractor rule and rejection of any exceptions to the rule.

[¶ 6] On appeal, Singer contends that Harrington was an employee/agent of New Tech and not an independent contractor. Furthermore, he argues that regardless of the employment status of Harrington, New Tech is liable under the Restatement (Second) of Torts § 429, and also because New Tech assumed affirmative duties of safety.

Finally, Singer argues that New Tech undertook a non-delegable duty by "agreeing to provide safety services."

## DISCUSSION

### ISSUE I

[¶ 7] Singer's first argument on appeal is that there are genuine issues of material fact regarding whether Harrington was an employee/agent of New Tech or an independent contractor. The district court determined that Harrington was an independent contractor. New Tech agrees with the district court's assessment and encourages this Court to affirm the summary judgment motion.

[¶ 8] We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo.2003).

> Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶ 10, 212 P.3d 614, 618 (Wyo.2009) (quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo. 2005)).

> "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v.*

he was associated with New Tech. New Tech hired Harrington after he responded to a newspaper ad while employed by an insurance com-

pany. Harrington left his job with the insurance company when he was hired by New Tech.

*Carbon County,* 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, P 9, 39 P.3d 1051, 1055 (Wyo. 2002)). The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that· a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

> "After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden."

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook,* ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron,* 2005 WY 65, PP 9–11, 113 P.3d 34, 37 (Wyo.2005).

*Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶¶ 8–9, 148 P.3d 8, 12–13 (Wyo.2006).

*Loredo,* ¶ 10, 212 P.3d at 618–19.

[¶ 9] With regard to determining whether an individual is an employee or independent contractor, we have previously stated that:

> The overriding consideration in distinguishing between master-servant relationships and employer-independent contractor relationships is the employer's · right to control the means and manner of the work. See, e.g., *Stratman v. Admiral Beverage Corp.,* 760 P.2d 974, 980 (Wyo.1988); *Cline v.· State, Dep't. of Family Services,* 927 P.2d 261, 263 (Wyo.1996); *Noonan v. Texaco, Inc.,* 713 P.2d 160, 164 (Wyo.1986).
>
> Such a right to control is a prerequisite of the master-servant relationship. Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship. Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily negatives the other, each depending on opposite answers to the same right of control inquiry.

*Coates v. Anderson,* 2004 WY 11, ¶ 7, 84 P.3d 953, 957 (Wyo.2004). When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of ... how the work is performed. *Noonan,* 713 P.2d at 166; *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1186 (Wyo. 1994).

When an express contract exists between the parties, it is important evidence in defining the relationship, although it is not conclusive of the issue. *Coates,* ¶ 14; *Noonan,* 713 P.2d at 164. Other factors which are important to the determination include: the method of payment, the right to terminate the relationship without incurring liability, the furnishing of tools and equipment, the scope of the work, and the control of the premises where the work is to be done. *Stratman,* 760 P.2d at 980; *Combined Insurance,* 584 P.2d at 1043. Another factor to be considered is whether the worker devotes all of his efforts to the position or if he also performs work for others. *Id.*

With regard to the "method of payment" criterion, an independent contractor usually determines the price of his services and bills for his services on a regular basis. *Noonan,* 713 P.2d at 166, citing *Simpson,* 770 F.2d at 501; *Combined Insurance,* 584 P.2d at 1043. On the other hand, when the employer determines the worker's rate of pay and takes deductions out of his paychecks for federal income taxes, Social Se-

curity, and Medicare then a master-servant relationship is indicated. *Id.* We have said that payment of workers' compensation and unemployment insurance premiums by an employer suggests that the worker is an employee rather than an independent contractor. See *In re: Claims of Naylor,* 723 P.2d 1237, 1240–41 (Wyo. 1986); *In re Reed,* 444 P.2d 329, 330 (Wyo. 1968). Similarly, when a worker is eligible to participate in benefit programs such as retirement or insurance plans, as a result of his association with the employer, it suggests a master-servant relationship exists. *Combined Insurance,* 584 P.2d at 1043.

*Diamond B Svcs., Inc. v. Rohde,* 2005 WY 130, ¶¶ 28–30, 120 P.3d 1031, 1041–42 (Wyo.2005).

*Kruckenberg v. Ding Masters, Inc.,* 2008 WY 40, ¶ 21, 180 P.3d 895, 901–902 (Wyo.2008).

[¶ 10] There is ample law that says the jury or other fact finder determines a disputed issue of whether a party is an employee or an independent contractor. 41 Am. Jur.2d *Independent Contractors* § 69 (2005 and 2009 Cum.Supp.). It is only when the evidence is susceptible to but a single inference that the Court rules as a matter of law. *Id.*

[¶ 11] In this instance, New Tech submitted its initial summary judgment motion contending that the facts clearly showed the safety coach (Harrington) was an independent contractor, thus relieving New Tech of any liability for Singer's injuries. The district court agreed and concluded that no genuine issue of material fact existed and that Harrington was an independent contractor:

A review of the record show that New Tech did not direct Harrington in the performance of his duties for coaching Caza employees as to safety issues, and no genuine issue of fact exists as to whether Harrington was an independent contractor.

We agree with the district court's conclusion.

[¶ 12] Among Singer's arguments disputing the district court's conclusion are the following: Harrington filled out, signed, and submitted New Tech time sheets labeling him as an "employee;" New Tech had the right to hire/fire; New Tech had the right to tell Harrington where to go and what to do; New Tech told Harrington to report to the Caza rig; Harrington only worked for New Tech during the time in question; New Tech provided Harrington liability insurance; and New Tech controlled Harrington's work assignments. According to Singer, this litany of reasons warrants reversal.

[¶ 13] In response to Singer's catalog of items, New Tech first argues that Caza Drilling, not New Tech, had the right to control Harrington's work—in fact, it was Caza that initiated the hiring of Harrington, as Caza wanted to maintain control over its safety program at the drilling rig. Harrington worked, according to New Tech, under Caza employees and only checked in with New Tech every six to eight weeks. In fact, no contract existed between New Tech and Harrington, and the time sheets given to Harrington that listed him as an employee were actually from the wrong word processing template. Regarding the method of payment, New Tech insists that paying Harrington on a day-rate basis is an appropriate method of payment for an independent contractor whose time is the service being sold. Furthermore, New Tech insists, and the record reflects, that no benefits, including medical insurance, were provided to Harrington nor were deductions made for federal income taxes, Social Security, and Medicare. New Tech also points out that it never provided any tools to Harrington, but instead, Caza provided Harrington a truck, on-site living provisions, and on occasion, a computer. New Tech argues that Caza had the ultimate control over the selection, hiring, and firing of the safety consultants on the rig, including Harrington. Caza also had control over Harrington's schedule. Finally, New Tech points out that Harrington did not devote all of his time to New Tech but instead to Caza.

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion

of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

*Collings v. Lords,* 2009 WY 135, ¶ 5, 218 P.3d 654, 656 (Wyo.2009) (internal citation omitted).

[¶ 14] Our chief focus regarding whether Harrington was a New Tech employee or an independent contractor is "who had the right of control." *Kruckenberg,* ¶ 21, 180 P.2d at 901. The right of control is the "overriding" consideration in making this determination. In examining the extent of the employer's control over the worker in this instance, it is important to distinguish control over the means and manner of the work from control over the end product of the work to be performed. *Diamond B Services, Inc., v. Rohde,* ¶ 28, 2005 130, 120 P.3d 1031, 1041 (Wyo.2005). An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done **only as to the result of the work and not as to the methods or means used.** *Id.,* ¶ 27, 120 P.3d at 1041. When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of how the work is performed.

[¶ 15] While New Tech did exercise some control over sending Harrington to Caza, they did not provide him with training, never supervised him on the rig, nor did they provide him with any instruction materials. In fact, once New Tech sent Harrington to Caza, the relationship between him and New Tech could be described as nominal. The fact that New Tech had a hand in developing the relationship between Harrington and Caza does not evidence control over the means and methods used in performing the work done on the actual rig. New Tech did not exercise control over the manner in which Harrington conducted his job, day in and day out at Caza. Our review of the record on appeal shows a distinct lack of evidence of right to control by New Tech over Harrington—there was no "controlling or pervasive role" over Harrington's work by New Tech. See *Hjelle v. Mid–State Consultants, Inc.,* 394 F.3d 873, 879 (10th Cir.2005).

In fact, the record shows instead that Caza had control over the means and manner of Harrington's work. He worked under Caza employee Harry Olds, from whom he would receive orders, and to whom he would report. Ultimately, Harrington's employment was at the discretion of Caza.

[¶ 16] The remaining factors to be considered also indicate that Harrington was an independent contractor rather than an employee. New Tech never provided any tools or equipment to Harrington. Rather, Caza provided Harrington a truck, an on-site trailer to live in and, on occasion, a computer. The only thing provided by New Tech to Harrington so that he could complete his work was liability insurance, which was specifically purchased and designed to cover independent contractors. Such insurance was "industry standard" for any company placing independent consultants. In addition, although Harrington was paid through New Tech, he was paid on a daily rate, indicating he was being paid by New Tech for his services rather than his time and, moreover, New Tech did not deduct taxes, Medicare, or Social Security from these payments. See *Fox Park Timber Co. v. Baker,* 53 Wyo. 467, 84 P.2d 736 (1938). Furthermore, New Tech actually **classified** Harrington as an independent contractor in issuing him an IRS Form 1099 for non-employee compensation.

[¶ 17] Regarding the right to hire and fire, the record shows that Caza had the ultimate decision over who it selected as its safety consultants. In fact, Caza employee Harry Olds conducted "semiformal" interviews to determine who was the best fit for the job on the rigs. Harrington only checked in with New Tech every six to eight weeks, indicating a distinct lack of the "employer/employee" hierarchy. Singer argues that because Harrington devoted all of his time to New Tech, he must have been their employee. Actually, from our review of the record, Harrington devoted all of his time to Caza during the time in question. In fact, he testified that if New Tech had called and directed him to report to another rig in Colorado, he most likely would not have done so because he was obligated to Caza.

[¶ 18]   We are able to conclude after our thorough review of the record that Harrington was an independent contractor of New Tech, even when viewing the evidence in the light most favorable to Singer. Harrington was not a full-time employee of New Tech. We conclude that the district court did not err in its grant of summary judgment to New Tech.

## ISSUE II

[¶ 19]   Regardless of Harrington's employment status—that is, whether he is classified as an employee of New Tech or an independent contractor—Singer argues in his second issue that the Restatement (Second) of Torts § 429 imposes liability on New Tech. Specifically, Singer argues that because Caza relied on New Tech to supply "safety services," New Tech is liable to Singer. New Tech disagrees, and contends that the Restatement is inapplicable in this instance anyway, as this Court has only adopted it in regard to medical malpractice cases.

[¶ 20]   The Restatement (Second) of Torts § 429 (1965) reads as follows:

> **§ 429.  Negligence in Doing Work Which is Accepted in Reliance on the Employer's Doing the Work Himself.**
>
> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

[¶ 21]   The Restatement §§ 409–429 addresses the liability of a principal or employer for injuries caused by an independent contractor.  Section 409 reads as follows: "...[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." The remaining sections address exceptions to this general rule.

[¶ 22]   Here, we are faced with determining whether or not the application of the Restatement § 429 is appropriate in this instance. "Generally, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Franks v. Indep. Prod. Co., Inc.*, 2004 WY 97, ¶ 10, 96 P.3d 484, 490 (citing *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 676 (Wyo.2000) (citing Restatement (Second) of Torts, §§ 409 (1965) ).

[¶ 23]   This Court has discussed the Restatement § 429 only once before in *Sharsmith v. Hill*, 764 P.2d 667, 672 (Wyo.1988), a medical malpractice action.  Research shows that § 429 is typically applied in the medical context.  That said, it is applicable in other circumstances.  See *Mudgett v. Marshall*, 574 A.2d 867, 870 (Maine 1990); *Christensen v. Sears, Roebuck and Co.*, 565 N.E.2d 1103, 1107–1108 (Ind.App.1991); *Faughnan v. Big Apple Car Service*, 828 F.Supp. 155, 163 (E.D.N.Y.1993).

[¶ 24]   In this case, the district court stated:

> In order to establish apparent authority in this case [relative to § 429], Singer would have to show both that New Tech, in its communications to Caza, conveyed and intended to convey that New Tech, through Harrington, was providing safety services for Caza, *and* that Caza acted in reliance on such a reasonable, but falsely created, impression to that effect.  That showing does not exist in this record.

[¶ 25]   The court concluded that Caza did not rely on New Tech for safety services; it relied on the coaches for these services. Caza relied on New Tech only to provide names, from which Caza would select a coach.  The record reflects that the district court's conclusion was correct.  Although Singer bases his argument on the premise that Harry Olds stated in his deposition that Caza "relied" on New Tech to make sure the Caza safety program was being followed, the overriding facts show that Caza's only "reliance" on New Tech was to provide names of safety coaches.  Accordingly, New Tech is not liable under Restatement § 429.

## ISSUE III

[¶ 26]   In his third argument on appeal, Singer contends that New Tech entered

into an oral contract with Caza to provide safety services. According to Singer, because New Tech hired Harrington to provide safety services, New Tech is vicariously liable to Singer for Harrington's alleged negligence because New Tech essentially assumed affirmative safety duties under the contract with Caza.

> Generally, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 676 (Wyo. 2000) (citing *Restatement (Second) of Torts* § 409 (1965)); *Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo. 1988); *see also, Noonan*, 713 P.2d at 164–67. Two limited exceptions to non-liability have been recognized in our previous decisions: (1) workplace owner/employer (owner) exercises controlling and pervasive role over the independent contractor's work; or (2) **owner assumes affirmative safety duties.** *Hittel*, 996 P.2d at 676; *Jones v. Chevron*, 718 P.2d 890, 896 (Wyo.1986). The first exception does not apply unless the employer (owner) has the right to control the details of the work. *Noonan*, 713 P.2d at 164. "The owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship." *Id.* at 165. We have reaffirmed this rule in *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029 (Wyo. 1987), and *Ramsey v. Pacific Power & Light*, 792 P.2d 1385, 1388 (Wyo.1990).

*Franks*, ¶ 10, 96 P.3d at 490 (emphasis added). This Court has also stated:

> [A]n employer "who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform." *Jones [v. Chevron U.S.A., Inc.*, 718 P.2d 890, 896 (Wyo.1986)]. In order for there to be a demonstration of the employer's "assumption of affirmative duties with respect to safety there must be "such a retention of a right of supervision that the contractor is not entirely free to do the work his own way." *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029, 1033 (Wyo.1987) (quoting *Restatement (Second) of Torts* § 414, cmt. c (1965)). Where, for example, the owner of the work site requires safe equipment and workmanship or even disciplines employees for unsafe practices but does not direct the method of the contractor's work performance, it does not retain sufficient control over the details of safety to render it liable. *Jones*, 718 P.2d at 896; *Noonan v. Texaco, Inc.*, 713 P.2d 160, 167 (Wyo.1986). "It is not enough that [the work site owner] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations· which need not necessarily be followed, or to prescribe alterations and deviations." *Stockwell*, 733 P.2d at 1033 (quoting *Rest[atement] 2d Torts* § 414, cmt. c) (emphasis omitted). Reserving the "right to require safe equipment, material, and supplies to be used by the contractor," the owner of the work site can merely be assured that the work will be performed "efficiently, in a good workmanlike manner, at a reasonable cost, and that the final result is as good as possible." *Noonan*, 713 P.2d at 167. In such a case, the owner of the work site owes no duty of reasonable care to an employee of the independent contractor. *Jones*, 718 P.2d at 896.

*Loredo*, ¶ 12, 212 P.3d at 623.

[¶ 27] Relying on deposition testimony from New Tech and Caza employees, Singer contends that New Tech assumed affirmative safety duties when it agreed "to provide safety services." Singer asserts that New Tech actually took over Caza's safety program. However, when looking at those comments on the record, many of the individuals are

actually testifying as to the safety coach's duties, not New Tech's duties.

**[¶ 28]** Singer insists that the factual situation here is particularly ripe for application of the safety exception because New Tech "assumed affirmative duties in regard to safety." Singer says that because New Tech hired Harrington to provide safety services, it was **New Tech** that had an obligation to provide safety services, not Caza. We fail to see how Caza relinquished control of its safety program entirely to New Tech. To satisfy the safety exception, there must be a showing that the defendant (in this case, New Tech) has "affirmatively assumed duties of safety." *Hjelle*, 394 F.3d 873, 880–81. Caza employee Harry Olds testified that the purpose of using a company like New Tech was to ensure that Caza remained in control of **its own** safety programs on the rigs. Mr. Olds explained:

> Our customers were asking for safety—dedicated safety consultants out on the rig, and they were going to hire them.

> We decided we would rather be in control, and so we went to an engineering company that handled safety, also, and made an agreement with them that they would provide our safety people and we would review their qualifications.

**[¶ 29]** Despite Singer's contention that New Tech was responsible for safety on the rig, Caza always retained control of its own safety program, evidenced by its use of New Tech to place a safety coach. Caza never contracted, orally or otherwise, with New Tech to provide safety services.

**ISSUE IV**

**[¶ 30]** In his final argument, Singer asserts that the contract between Caza and New Tech created a non-delegable duty for New Tech as to safety duties on the rig site. Singer insists that New Tech had a "contractual obligation to provide extensive safety services to Caza." In support of his argument, Singer cites to several jurisdictions, including the Tenth circuit in *Hull v. Chevron*, 812 F.2d 584, 588–89 (10th Cir.1987). In *Hull*, the court stated:

> [U]nder Wyoming law, oil and gas drilling is an ultrahazardous and extrahazardous activity; and that the duty to maintain a safe place to work, is, therefore, nondelegable.

According to Singer, because New Tech accepted the duty of implementing and enforcing the Caza rig safety program, New Tech should be responsible for Singer's injuries.

[John C. Hull], an employee of Chase Drilling Company (Chase), was assisting two co-employees in unloading and moving drill collars, 8,000 pound cylinders utilized around the drill bit. The low man on the totem pole or "worm" in oil field parlance, Mr. Hull was positioning certain racks onto which the drill collars were temporarily being placed when one of the drill collars rolled off the tines of the forklift and onto his right leg, seriously injuring it.

Mr. Hull filed suit in the United States District Court for the District of Wyoming seeking damages for this injury against his employer, Chase, and the lessee, Chevron, which had hired Chase to drill the well. Pursuant to the Wyoming Workers' Compensation Act, Wyo. Stat. §§ 27–12–101 to –805 (1977), the district court dismissed the action against Chase. In an amended complaint, Mr. Hull then alleged in three causes of action for negligence, strict liability, and culpable negligence that Chevron (1) had a nondelegable duty in an ultrahazardous activity to maintain a safe working environment; (2) was negligent in failing to supervise the proper operation of the forklift which it had leased and placed on the site; (3) had failed to maintain a smooth and level terrain around the rig; (4) retained control of the drilling operations and, thus, was vicariously liable for the negligent acts of Chase's employees; and (5) owed Hull a duty of care as a third-party beneficiary of Chevron's federal lease which imposes certain safety requirements on oil and gas operators.

During the six-day trial, the jury heard testimony from Chase and Chevron employees, various safety and oil and gas experts, and medical and rehabilitation specialists. Mr. Hull sought to prove that under the particular day rate contract governing the relationship between Chase and Chevron, Chevron retained the right to

control and direct the entire drilling operation. In defense, Chevron attempted to establish Chase's role as an independent contractor with primary control over the details of the drilling operation, Chase's negligence in failing to supervise its fork-lift operator who was alleged to have used amphetamines on the morning of the accident, and the plaintiff's negligence and contributing drug use. As a third-party defendant, Chase abandoned its pretrial contention that it was an independent contractor and put on evidence to underscore its theory that the "company man," Chevron's employee, Mr. Bobby Haynes, directed and supervised the drilling operation.

In returning a verdict for the plaintiff, the jury found by a preponderance of the evidence that Chevron and Chase were governed by a principal/agent, not operator/independent contractor, relationship.

*Hull,* 812 F.2d at 585–86.

[¶ 31] Regarding this issue, the district court stated:

Arguably, either Chevron, which had the lease, or Caza, which drilled the wells, would have a non-delegable duty to ensure safety practices at the rig. Singer does not discuss how these non-delegable duties could be transferred or delegated to New Tech.

 [¶ 32] We agree with the district court. Furthermore, as we stated above, we fail to see an issue of material fact as to New Tech's responsibilities regarding safety on the rig. The record is clear that the safety program was specifically a Caza program. New Tech provided no instruction, guidance, or supervision regarding safety issues on the rig. New Tech was a placement service, and its responsibility was fulfilled when it provided Caza with names of possible safety coaches. Caza then picked Harrington as its coach. In order for this Court to address the issue of a non-delegable duty, New Tech must have contracted to provide safety services to Caza Drilling. Unlike the *Hull* case, New Tech did no such thing, as it never exercised any control over safety on the rig, nor did it assume any affirmative safety duties on site.

## CONCLUSION

[¶ 33] We find no question of material fact regarding whether the safety coach was an employee or independent contractor—the record shows that he was an independent contractor. Also, there is no indication that the Restatement § 429 imposes any liability whatsoever on New Tech. New Tech did not assume any affirmative duties regarding safety, nor is New Tech responsible for Singer's injuries due to any "non-delegable" duty—no such duty on the part of New Tech existed.

[¶ 34] Affirmed.