# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 3

OCTOBER TERM, A.D. 2015

*January 6, 2016*

MERIT ENERGY COMPANY, LLC,

**Appellant**
**(Defendant),**

**v.**                                                    S-15-0141

**BLAKE HORR,**

**Appellee**
**(Plaintiff).**

---

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
> Timothy W. Miller, Attorney at Law, Casper, Wyoming; Weston W. Reeves, Park Street Law Office, Casper, Wyoming. Argument by Mr. Miller.

*Representing Appellee:*
> G. Bryan Ulmer, III, and Grant H. Lawson, The Spence Law Firm, LLC, Jackson, Wyoming. Argument by Mr. Ulmer.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

---

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Merit Energy Company, LLC, needed to clean out its oil and gas wells that had become clogged with debris over time.  It hired an independent contractor, Basic Energy Services, Inc., to do the job.  Unfortunately, Basic employee Blake Horr was seriously injured when a stripping rubber launched out of a wellhead due to a buildup of pressure. Horr sued Merit based on several exceptions to the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.  A jury returned a verdict finding Merit substantially at fault and that its fault had caused Horr well over two million dollars in damages.  The district court entered judgment on the jury verdict.

[¶2]    Merit contends that the district court misapplied Wyoming law both in its instructions to the jury and in denying Merit's motion for judgment as a matter of law.  A solicitous review of our law and the record proves otherwise.  Accordingly, we affirm.

## ISSUES

[¶3]    1.  In resolving whether Merit owed a duty to Horr, did the district court err when it instructed the jury to determine if Merit retained control over any part of the work that caused injury to Horr?

2.  Did the district court abuse its discretion by refusing to give the jury Merit's proposed  instruction detailing Basic's duty of care to Horr, and opting instead to provide a more general duty of care instruction?

3.  Was the evidence such that reasonable persons could only reach one conclusion as to the verdict, which would have required the district court to grant Merit's motion for judgment as a matter of law?

## FACTS

[¶4]    Merit owns and operates oil and gas wells in the Lost Soldier Unit near Bairoil, Wyoming.  These are high pressure wells because Merit injects $CO_2$ into the reservoirs in order to force oil to its producing wells.  Over time, the bottoms of the wells accumulate sand and other debris that limits production.  When this occurs, the wells need to be cleaned out to restore optimal flow.

[¶5]    Merit hired an independent contractor, Basic, to clean out a few of these wells. The field was managed by Merit's operations manager, John Brooks, who supervised Merit's field foreman, otherwise known as the company man.  The company man was in charge of cleanout operations in the field, and he provided direction to Basic's rig manager.  During the relevant time period, two different Merit company men were in

1

charge. Mike Self held that position when Basic started working in this field. Steve Kalberer took over in January 2011, roughly three months before the incident with Horr.

[¶6]    The equipment used to clean out the well at issue in the instant case included a stripper head for well control, which was located just above the blowout preventer (BOP). The stripper head encased a rubber that fit tightly around the tubing or drill pipe Basic inserted and removed as part of cleanup operations. The rubber was held in place by bolts into the head's metal top. The diagram below illustrates the general setup of the stripper head and associated equipment.



Plaintiff's Ex. 74-B    000001

[¶7]    Many months before the incident involving Horr, Merit had provided a "Washington" stripper head, along with the BOP, for the Basic crew to use when servicing Merit's wells. Significantly, the Washington head had a release valve that could be used to relieve pressure trapped between it and the blowout preventer. Without such a valve, the well would need to be "killed" to control the pressure.[1]

[¶8]    At some point prior to the accident, Merit's company man, Self, decided that Merit would no longer pay for the Washington head and told Basic's supervisor, Willard Sanders, that Basic needed to provide a different stripper head. Basic obtained a "Hercules" stripper head, which did not have a release valve. Basic presented the

_____

[1] Killing a well involves pumping fluid down the annulus or well bore until the fluid flows back through the bottom of the tubing (drill pipe). It is done to overcome the pressure inside the well and keep the oil and/or gas from reaching the surface. Killing a well is different from top-killing a well, which involves pumping fluid down the tubing to create a vacuum.

Hercules head to Self for approval, and he approved it even though it did not have a release valve. A Hercules head was used on the well the day Horr was injured.

[¶9]   On April 11, 2011, Horr was part of a Basic crew performing cleanout operations on one of the wells. Sanders was Basic's supervisor on the job, Adam Eddy was the workover rig operator, and Horr was the floorhand. During the job, tubing (drill pipe) became stuck in the rubber seal in the wellhead as the crew was pulling the pipe out of the well. The crew stopped work, closed the BOP, and Sanders sought out Kalberer to see how Merit wanted to proceed.

[¶10]   Kalberer came to the well site and had Sanders come over to his truck to discuss the problem. Without personally inspecting the equipment or checking the well pressure, Kalberer directed the Basic crew to replace the stripping rubber. Accordingly, Horr began removing bolts that held the rubber in place. As he did so, pressure trapped between the BOP and the Hercules head blew the stripping rubber out of the wellhead and struck Horr while rocketing thirty feet up the drill pipe. Horr suffered serious injuries to his left hand and arm.

[¶11] Horr sued Merit based upon several exceptions to the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. The matter made its way to a jury trial, during which Merit unsuccessfully moved for judgment as a matter of law at the close of all the evidence.[2] After eight days of hearing evidence and argument, the jury sided with Horr and returned a verdict finding Merit 45% at fault for its own negligence. The district court entered judgment in Horr's favor for $2,335,923.90 against Merit based upon the fault of all parties.[3] Merit renewed its motion for judgment as a matter of law after the verdict was rendered, and the motion was again denied.

[¶12]  Merit timely perfected this appeal.

## DISCUSSION

### *Jury Instruction re Direct Negligence Claim*

[¶13]  Over the years, this Court has had several occasions to address the law concerning liability of an owner of a worksite who employs an independent contractor when an employee of that contractor is injured. A close look at our law is necessary in order to resolve Merit's first contention that the district court erred in instructing the jury.

---

[2] A party may move for judgment as a matter of law at any time before the case is submitted to the jury. W.R.C.P. 50(a)(2).

[3] The jury also found Basic 45% at fault and Horr 10% at fault.

[¶14] Years ago, this Court adopted Restatement (Second) of Torts § 409 (1965, database updated 2015), which provides that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *See Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 n.1 (Wyo. 1986); *see also Hittel v. WOTCO, Inc.*, 996 P.2d 673, 676 (Wyo. 2000). This general rule exists for good reason. An employer of an independent contractor generally does not have control over the manner in which the work is done by the independent contractor, so the independent contractor, rather than the employer, is the proper party upon whom to impose the obligation to prevent the risk of harm and to bear responsibility if it fails to do so and injury results. *See* Restatement (Second) of Torts § 409 cmt. b; *see also Jones*, 718 P.2d at 895.

[¶15] However, we have recognized two exceptions to this rule. *See Jones*, 718 P.2d at 893-94. One exception is found in Restatement (Second) of Torts § 414, which deals with the direct liability of an employer in connection with the work to be done. *Id.* In order to recover in such a direct negligence action, the plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of that duty, causation, and damages. Section 414 states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414.

[¶16] It is important to remember that this exception deals with direct negligence of the employer based upon a legal duty created because of the control it retains over the independent contractor's work. *See id.*; *see also Hill v. Pac. Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo. 1988). The operative words of this Restatement section are "control of any part of the work." The comments to this section provide helpful guidance as to the level of control required, and thus we quote the bulk of them despite their length:

> a. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as

4

master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

.    .    .

c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmts. a & c; *see Stockwell v. Parker Drilling Co.*, 733 P.2d 1029, 1033 (Wyo. 1987).

[¶17]  Based upon § 414 and its commentary, this Court has articulated that the owner of the worksite that employs an independent contractor and

retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the [independent] contractor was hired to perform.

*Jones*, 718 P.2d at 896; *see Hill*, 765 P.2d at 1349-50; *see also Stockwell*, 733 P.2d at 1031-33; *Brewster v. Salveson Const., Inc.*, 765 P.2d 1350, 1353 (Wyo. 1988); *Hittel*, 996 P.2d at 676; *Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶¶ 12, 13, 212 P.3d 614, 623, 626 (Wyo. 2009).  The analysis is two-fold; that is, courts must determine whether the employer retained the right to direct the manner of performance *or* assumed affirmative

duties with respect to safety. As to the level of control, "[a]n owner does not have to retain a great deal of control over the work to be liable for an employee's harm under § 414 . . . [as] the owner can be liable even if he gives up enough control to make the contractor an 'independent contractor' under vicarious liability analysis." *Jones*, 718 P.2d at 895; *see Stephenson v. Pac. Power & Light Co.*, 779 P.2d 1169, 1177 (Wyo. 1989).

[¶18] The other exception to the general rule—wholly different than that of the direct negligence of the employer—comes in the form of vicarious liability based upon the principle of respondeat superior. *See* Dan B. Dobbs, *The Law of Torts* §§ 333-36 at 905-20 (2000); *Cockburn v. Terra Res., Inc.*, 794 P.2d 1334, 1338-39, 1342-43 (Wyo. 1990).[4] With this exception, the employer is strictly liable for the negligence of the supposed independent contractor, who turns out to be a servant employee due to the greater degree of control exercised. *Cockburn*, 794 P.2d at 1339; *see also* Dobbs, *supra*, §§ 333-36 at 905-20. The fundamental question is whether the independent contractor actually is such or is an employee akin to the longstanding master-servant relationship. *See Stephenson*, 779 P.2d at 1176.

---

[4] A statement in *Cockburn* could be construed to have conflated the analyses for direct liability under § 414 and vicarious liability:

> The product of our precedent is that an employer of an independent contractor, although potentially responsible for injuries to employees of the contractor, must assume a controlling and pervasive role in the work being done in order to generate any duty of care sufficient to establish vicarious liability for the negligence of the independent contractor.

794 P.2d at 1342; *see Nat. Gas Processing Co. v. Hull*, 886 P.2d 1181, 1184 (Wyo. 1994). While both exceptions turn on retained control, they require different levels of such control, and are based on different principles of tort law: negligence versus strict liability based on respondeat superior. We interpret the statement in *Cockburn*—"controlling and pervasive role"— and other cases reciting the same to mean that there must be a controlling and pervasive role by the employer over the independent contractor's performance of the work to transform that relationship into one of master-servant, thus creating a situation where the employer is vicariously liable for the independent contractor's negligence.

A subsequent statement in *Franks v. Indep. Prod. Co.,* 2004 WY 97, ¶ 10, 96 P.3d 484, 490 (Wyo. 2004), also merits clarification. *Franks* dealt with a vicarious liability theory (although it imprecisely used the term "duty"), wherein we stated that "[t]wo limited exceptions to non-liability have been recognized in our previous decisions: (1) workplace owner/employer (owner) exercises controlling and pervasive role over the independent contractor's work; or (2) owner assumes affirmative safety duties." *Id*. While the former statement fairly describes the level of control for vicarious liability purposes under the principle of respondeat superior, the latter regarding the assumption of affirmative safety duties is part of the direct negligence theory under § 414 of the Restatement (Second) of Torts. Thus, in a § 414 direct negligence claim, the pronouncement from *Jones* controls, *see* ¶ 17 *supra*, not that contained in *Franks* and other cases. *See, e.g.*, *Singer v. New Tech Eng'g L.P.*, 2010 WY 31, ¶ 26, 227 P.3d 305, 313 (Wyo. 2010); *Hjelle v. Mid-State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir. 2005).

[¶19] "The overriding consideration in distinguishing between master-servant relationships and employer-independent contractor relationships is the employer's right to control the means and manner of the work." *Singer v. New Tech Eng'g L.P.*, 2010 WY 31, ¶ 9, 227 P.3d 305, 309 (Wyo. 2010). This right to control is a requirement of the master-servant relationship. *Id.* Equally, the absence of such a right of control is a prerequisite of an independent contractor relationship. *Id.* "Master-servant and independent contractor are thus opposite sides of the same coin; one cannot be both at the same time with respect to the same activity; the one necessarily negatives the other, each depending on opposite answers to the same right of control inquiry." *Coates v. Anderson*, 2004 WY 11, ¶ 7, 84 P.3d 953, 957 (Wyo. 2004); *see also Kruckenberg v. Ding Masters, Inc.*, 2008 WY 40, ¶ 21, 180 P.3d 895, 901 (Wyo. 2008).

[¶20] If there is an express contract between the parties, such a document is important in defining the relationship, but it is not conclusive of the issue. *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 29, 120 P.3d 1031, 1041 (Wyo. 2005); *Singer*, ¶ 9, 227 P.3d at 309; *Coates*, ¶ 14, 84 P.3d at 959. Additional factors that ought to be considered include the method of payment; right to terminate the relationship without incurring liability; furnishing of tools and equipment; scope of the work; control of the premises where the work is to be done; and if the worker devotes all of his efforts to the position or if he also performs work for others. *Singer*, ¶ 9, 227 P.3d at 309.

[¶21] In the instant case, Horr sued Merit based on both of these exceptions. The jury found that Merit retained sufficient control over the portion of Basic's work that caused Horr's injuries to owe him a duty under § 414.[5] It then determined that Merit breached that duty, and found the company 45% at fault for causing Horr's injuries. However, the jury did not find that Merit exercised a controlling and pervasive role over Basic's work that converted the employer-independent contractor relationship with Basic to one of master-servant. Thus, Merit avoided vicarious liability for Basic's negligence, which the jury found to amount to 45% of the total fault. The narrow issue Merit raises on appeal concerns whether the district court properly instructed the jury regarding the direct negligence claim under § 414, which Merit contends it did not.

[¶22] Jury instructions provide the jury needed guidance as to the applicable law in a given case. *Pina v. Christensen*, 2009 WY 64, ¶ 5, 206 P.3d 1298, 1299-300 (Wyo. 2009). "Instructions are sufficient if they correctly state the law, they are not misleading, and they permit the parties to argue their respective theories of the case. Instructions must not be extracted piecemeal to establish error, but rather are reviewed in their entirety."

---

[5] Whether a duty of care exists is often a question of law to be resolved by the court. *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 20, 74 P.3d 152, 160 (Wyo. 2003). However, whether the employer of an independent contractor retained sufficient control to impose a duty of care is a question of fact for the jury unless only one reasonable inference can be drawn. *See Loredo*, ¶¶ 12, 13, 212 P.3d at 622, 626 (citing *Noonan v. Texaco, Inc.*, 713 P.2d 160, 164 (Wyo. 1986)).

*Id.* That an instruction could have been more precisely drafted or in a way more favorable to a party does not warrant reversal for a new trial. *Id.* at ¶ 7, 206 P.3d at 1300.

[¶23] The legal sufficiency of jury instructions is reviewed de novo, with this Court asking first whether an instruction is erroneous, and second whether the error prejudiced a party.[6] *Id.* at ¶ 6, 206 P.3d at 1300. Prejudice is not presumed and the burden is on the appellant to demonstrate it. *Id.* The district court has extensive discretion in tailoring jury instructions, so long as they correctly state the law and fairly and adequately cover the issues presented. *Id.* at ¶ 8, 206 P.3d at 1300. Accordingly, our review of a district court's decision to give or refuse a particular jury instruction is for an abuse of discretion. *Id.*

[¶24] The district court instructed the jury as follows concerning the general rule governing the direct negligence exception:

> As a general rule, one who entrusts work to an independent contractor is not obligated to control the work done by the independent contractor or protect the independent contractor's employees from hazards which are part of the work. But, if one who entrusts work to an independent contractor retains control of any part of the work, it is subject to liability for physical harm to others which is caused by its failure to exercise its control with reasonable care. You must determine whether Merit Energy Company retained control over any part of the work which caused injury to Blake Horr. If you find that Merit Energy Company retained control over an aspect of work which caused Blake Horr's injuries and damages, then you are instructed that Merit Energy Company owed a duty to Blake Horr to exercise the degree of care which should reasonably be expected of the reasonable careful person under the same or similar circumstances.

This language parallels Restatement (Second) of Torts § 414 and our precedent.

---

[6] Horr urges us to find Merit's objection to the proposed instruction insufficient and therefore to apply a plain error standard of review. We decline the invitation. Wyoming Rule of Civil Procedure 51(b) directs that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto . . ., stating distinctly the matter objected to and the grounds of the objection." As this Court has explained, the rule requires an attorney to provide the district court with a meaningful explanation for the objection concerning the nature of the contended error and the specific grounds for the objection in order for the trial judge to exercise its discretion in re-evaluating the instruction. *See Werner Enterprises, Inc. v. Brophy*, 2009 WY 132, ¶ 18, 218 P.3d 948, 954 (Wyo. 2009). Merit provided the district court a proposed jury instruction with the exact language that it argues on appeal was legally correct. Merit explained at the instruction conference that it objected to the failure to give the instruction in the form it proposed. Merit's objection was sufficient under Rule 51(b) and our precedent.

8

[¶25] Nevertheless, Merit takes issue with the phrase "retained control over any part of the work," claiming that our law required a statement similar to that contained in its proposed jury instruction: "If you find Merit Energy Company retained control over a *hazard* that caused harm to Blake Horr, then Merit Energy Company had a duty to exercise its control with reasonable care under the circumstances." (Emphasis added). Merit maintains that use of the word "hazard" as it proposed was crucial and called for by *Jones*. We disagree.

[¶26] In *Jones*, this Court explained the direct negligence exception in § 414 in great detail, and indeed quoted that section in its entirety to make the point clear. 718 P.2d at 895. Based upon § 414, we plainly held "that an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform." *Id.* at 896.

[¶27] In arriving at our holding in *Jones*, we did say that the general rule "should not apply when the owner maintains control over the hazard that causes the harm." *Id.* at 895; *see also Stephenson*, 779 P.2d at 1177. This statement does not obfuscate the patent holding of the case. While "control over the hazard" could theoretically be misconstrued to mean something different than "control over any aspect of work which caused Blake Horr's injuries," we see no realistic discernible difference in this case. Furthermore, to accept Merit's thinking would be to confuse the nature of the contracted work with control over its methods and means. *See Traudt v. Potomac Elec. Power Co.*, 692 A.2d 1326, 1334-35 (D.C. 1997). Any possible confusion should be resolved by this opinion.

[¶28] The instruction given by the district court correctly stated the law and was not misleading. It was therefore not erroneous.

## *Jury Instruction re Basic's Duty of Care*

[¶29] Merit also takes issue with the district court's decision not to provide the jury with an instruction on the specific duty Basic owed Horr. We have already explained the standard of review we apply when a trial court's instructions are challenged, and we need not repeat it. *See* ¶¶ 22-23, *supra*.

[¶30] We have reviewed the instructions in their entirety, and we cannot say that the district court abused its discretion in not giving Merit's proposed instruction. The instructions that were given by the district court supplied the jury with the following direction in regard to the duty of care:

- Instruction No. 18: "Merit Energy Company owed a duty to Blake Horr to exercise the degree of care which should reasonably be expected of the reasonable careful person under the same or similar circumstances."

- Instruction No. 19: "Basic Energy Services had a duty to exercise reasonable care in the performance of its work."

- Instruction No. 20: "Blake Horr had a duty to exercise reasonable care in the performance of his work."

[¶31] There was evidence and argument concerning Basic's obligations to Horr. Based upon the instructions, the jury allocated 45% of the fault to Merit, 45% to Basic and 10% to Horr.

[¶32] These instructions—along with other instructions such as those on Horr's burden of proof and allocation of fault—correctly stated the law, were not misleading, and permitted counsel for the parties to argue their respective theories of the case. Accordingly, the district court did not abuse its discretion in refusing to instruct the jury as Merit proposed.

### *Judgment as a Matter of Law*

[¶33] Judgment as a matter of law under Wyoming Rule of Civil Procedure 50 should be granted cautiously and sparingly. *Johnson v. Reiger*, 2004 WY 83, ¶ 8, 93 P.3d 992, 995 (Wyo. 2004). Merit contends that it ought to have been granted because Horr did not provide sufficient evidence to raise a jury question as to whether it owed him a duty or not. In order to prevail on this argument, Merit had to show that the evidence was legally insufficient to support Horr's claim, leaving the district court with no choice but to enter judgment in its favor without submitting the question to the jury. *See id.*

[¶34] "We review de novo a decision to grant or deny judgment as a matter of law, meaning we examine the record anew affording no deference to the district court's views." *Id.* The test is whether the evidence appearing in the record is such that reasonable persons could reach but one verdict. *Id.* The evidence is viewed in the light most favorable to the nonmoving party, and that party is given the benefit of all reasonable inferences that may be drawn from it. *Id.* "When the evidence permits more than one reasonable inference or the inferences favorable to the moving party are subject to doubt, the matter is properly for the jury to decide and a motion for judgment as a matter of law must be denied." *Id.*

[¶35] We have carefully reviewed the entire record designated by the parties. Viewing the evidence in the light most favorable to Horr, and giving him all reasonable inferences that may be drawn from it, we conclude that the evidence presented a jury question as to

10

whether Merit owed him a duty under the exception in § 414 because of its retained control over parts of the work that caused his injuries. Several witnesses testified regarding the level of control Merit exercised over Basic's cleaning of the wells, including the well involved in this case. Merit's own employees—Brooks and Kalberer—testified as to the level of control it exercised over the equipment and procedures relating to the cleanout process and regulation of well pressure. Basic's employees—such as supervisor Sanders—confirmed important points as to the level of control.

[¶36] To summarize the evidence in the light most favorable to Horr, Merit controlled the pressure of its well through injection of $CO_2$, and it retained control over the equipment used to control the pressure, including the stripper head utilized. It had expertise in the management of well pressure. It retained authority to kill the well, which it did not direct to be done, and its company man told Basic what to do when the pipe became stuck during the cleanout process without checking well pressure or the tubing stuck in the wellhead. This evidence was sufficient to raise a jury question as to whether Merit retained control over the portion of Basic's work that caused Horr's injuries and therefore owed him a duty of care.

[¶37] We conclude that the evidence, when viewed in the light most favorable to Horr, was sufficient to permit more than one reasonable inference as to whether there was sufficient control to impose a duty, and that inferences favorable to Merit were subject to doubt. The issue was therefore for the jury to decide, and the district court did not err in denying Merit's motion and renewed motion for judgment as a matter of law.

[¶38] Affirmed.

11