Sharon E. **FISCUS** and Dewayne Wuestenberg, Appellants (Plaintiffs),

v.

**ATLANTIC RICHFIELD**, a Delaware corporation, formerly a Pennsylvania corporation, Appellee (Defendant).

No. 88–218.

Supreme Court of Wyoming.

May 11, 1989.

Petition for Reargument and Rehearing Denied June 27, 1989.

---

J. Douglas McCalla, Spence, Moriarity & Schuster, Jackson, for appellants.

Patrick R. Day, Holland & Hart, Cheyenne, Jane Michaels, Geraldine A. Brimmer, and Russell S. Jones, Denver, Colo., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

Our task in this case is to ascertain whether there exists any genuine issue of material fact which would prevent the entry of summary judgment against Sharon E. Fiscus and DeWayne Wuestenberg (Appellants) in their action to recover damages for injuries to Fiscus. They contend that Atlantic Richfield Company (ARCO) assumed affirmative duties with respect to safety at the Black Thunder Mine where Fiscus worked and that it owned the piece of heavy equipment (an earth-moving scraper) that Fiscus was operating when she was injured while working. Appellants insist that the record demonstrates genuine issues with respect to material facts from which an independent duty owed to Appellants by ARCO could be found. We agree with the conclusion of the trial court that Appellants failed to demonstrate any genuine issue of material fact and that ARCO was entitled to judgment as a matter of law. The summary judgment entered in favor of ARCO is affirmed.

Appellants state the issues in this case to be:

"I. Did the district court err in granting summary judgment to the defendant when there existed a genuine issue of material fact as to defendant's assumption of affirmative duties with respect to safety?

"II. Did the district court err in granting summary judgment to the defendant despite defendant's ownership of the device that injured Sharon Fiscus?

ARCO sets forth only a single issue:

"I. Did the district court correctly decide that plaintiff had failed to come forward with any material facts demonstrating that ARCO had assumed a duty to the plaintiff as a matter of law?"

This case comes before the court for the second time. In the first instance, the court addressed the dismissal of Appellants' complaint. We held that ARCO, the parent corporation of Thunder Basin Coal Company (Thunder Basin) and an independent entity, was not immune from suit because of the Wyoming Worker's Compensation Act. We also held that Appellants' allegations of independent acts of negligence were sufficient to state a cause of action. Consequently, the court reversed the order of the trial court granting ARCO's Motion to Dismiss and remanded the case for further proceedings. *Fiscus v. Atlantic Richfield Company*, 742 P.2d 198 (Wyo.1987).

In the continuing saga, ARCO filed a Motion for Summary Judgment. ARCO supported its motion by affidavits and oth-

er discovery materials establishing that there was no genuine issue of material fact and asserted it was entitled to judgment as a matter of law. The district court ruled that Appellants had failed to respond sufficiently to the summary judgment materials of ARCO and, pursuant to Rule 56, W.R. C.P., granted summary judgment against them. This appeal follows from that summary judgment.

In support of their claim of an independent duty on the part of ARCO, Appellants emphasize their record presentation of certain evidence which they assert demonstrates genuine issues of material facts. They point to the Wyoming Workers Compensation Division record showing Sharon Fiscus to be an employee of ARCO and that the benefits she received came from ARCO's Wyoming workers' compensation account. They rely upon the fact that ARCO retained a fifty percent (50%) overriding royalty interest in the mine, and they mark the fact that the Bureau of Land Management continues to refer to mining leases relating to the Thunder Basin's Black Thunder Mine as jointly held by ARCO and Thunder Basin. Appellants contend that ARCO pays all taxes on the mine. More precisely, then, they show that ARCO officials paid visits to the mine which would average four times a day and that various ARCO officials did attend safety meetings conducted by Thunder Basin at the mine. They place a great deal of importance upon the fact that the president of Anaconda Minerals, another corporate subsidiary of ARCO, had sent a memorandum to Thunder Basin recommending the use of seat belts by the employees of Thunder Basin. Furthermore, Appellants contend that the record shows that ARCO reviewed the qualifications of, and interviewed all, safety directors before they were hired by Thunder Basin. There also is reliance upon the fact that ARCO had two representatives at the Black Thunder Mine who worked on Thunder Basin's training program and set policy in regard to training at the mine.

We have adopted as the legal standard for the liability of a parent corporation the requirement that the parent assume some independent legal duty by retaining or exercising control over some aspect of the operation of a subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries. *Wessel v. Mapco, Inc.*, 752 P.2d 1363 (Wyo.1988); *Fiscus*, 742 P.2d 198. Essentially, this is the same test that is invoked in considering an owner's liability to the employee of a contractor. Cf. *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo.1986); *Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo.1986). We have rejected any doctrine of respondeat superior resulting in liability on the part of a parent corporation for acts of its subsidiary. *Fiscus*. Cf. *Noonan*. The parent company is entitled to the same legal separation from its subsidiary, as well as the resulting protection from liability, that any individual shareholder enjoys with respect to a corporation in which stock is held. *United States v. Van Diviner*, 822 F.2d 960 (10th Cir.1987).

In light of the legal standard and the actual contentions of Appellants, we must test this case against our summary judgment standards. The essential purpose of the summary judgment procedure is to eliminate the expense and burden of a formal trial when only questions of law are involved. *Johnson v. Soulis*, 542 P.2d 867 (Wyo.1975); *Vipont Mining Company v. Uranium Research and Development Company*, 376 P.2d 868 (Wyo.1962). We can approve and sustain a summary judgment only when persuaded that there is no genuine issue with respect to any material fact, and that the prevailing party is entitled to judgment as a matter of law. *Larsen v. Hall*, 770 P.2d 1089 (Wyo.1989); *Farr v. Link*, 746 P.2d 431 (Wyo.1987); *Duffy v. Brown*, 708 P.2d 433 (Wyo.1985); *Greaser v. Williams*, 703 P.2d 327 (Wyo. 1985). Because summary judgment forecloses a trial on the merits, we do not lightly consider appeals from summary judgment. *Larsen; Kobielusz v. Wilson*, 701 P.2d 559 (Wyo.1985). Conversely, however, we recognize that the beneficial purpose of summary judgment would be defeated if cases could be forced to trial simply by an assertion that a genuine issue

of material fact exists. *Noonan; Johnson; Maxted v. Pacific Car & Foundry Company,* 527 P.2d 832 (Wyo.1974).

The process for identifying genuine issues of material fact also is familiar. The moving party has the burden of demonstrating the absence of any genuine issue of material fact and justifying its entitlement to judgment as a matter of law. *Jones Land & Livestock Company v. Federal Land Bank of Omaha,* 733 P.2d 258 (Wyo.1987). This is a significant burden, particularly when we note that we examine the record from the perspective of the party opposing the motion and grant to that party the benefit of every favorable inference and reasonable doubt. *Wessel; England v. Simmons,* 728 P.2d 1137 (Wyo. 1986); *Jones; Roth v. First Security Bank of Rock Springs,* 684 P.2d 93 (Wyo.1984). Once that showing is presented by the moving party, however, the burden then shifts to the party defending against the motion to present for the record facts in the form of admissible evidence which structure a genuine issue of material fact. *Dubus v. Dresser Industries,* 649 P.2d 198 (Wyo. 1982); *Hyatt v. Big Horn School District No. 4,* 636 P.2d 525 (Wyo.1981); *Moore v. Kiljander,* 604 P.2d 204 (Wyo.1979); Rule 56(e), W.R.C.P.

■ It does not matter how genuine a factual issue is; if it does not relate to a material fact, it cannot prevent the entry of a summary judgment. *Johnson,* 542 P.2d 867; *Gladstone Hotel, Inc. v. Smith,* 487 P.2d 329 (Wyo.1971). In *Johnson,* 542 P.2d at 871–72, this court defined a material fact as:

"* * * [O]ne having some legal significance, that is, under the law applicable to a given case, it would control in some way the legal relations of the parties; as one upon which the outcome of litigation depends in whole or in part; as one on which the controversy may be determined; as one which will affect the result or outcome of the case depending upon its resolution; and one which constitutes a part of the plaintiff's cause of action or of the defendant's defense. A fair summary of these definitions is that

for purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." (Footnotes omitted.)

Such a fact must in some way control, define, or modify the legal relations of the parties in some tangible manner and, thus, have the clear effect of establishing or refuting the essential element of a claim or defense asserted by the parties. *Baldwin v. Dube,* 751 P.2d 388 (Wyo.1988).

We also are mindful of our duty to examine the evidence in the same light as it was presented to the trial court. *Connaghan v. Eighty–Eight Oil,* 750 P.2d 1321 (Wyo. 1988). In so doing, we view the evidence in the light most favorable to appellants and, as we have noted, give them the benefit of every reasonable inference and every doubt. *Wessel; England; Jones; Roth.*

In this context, the facts which Appellants contend the record will support do not directly contravene the record showing made by ARCO that it did not retain the right to control or exercise control over the safety aspects of the Black Thunder Mine, over the mining operations, or over the scraper that Fiscus operated at the time of her injuries. Appellants must rely upon inferences to be drawn from those facts in order to structure a genuine issue of material fact that will avoid the summary judgment.

This court has adjusted its position over the years with respect to the reliance upon inferences to structure a genuine issue of material fact in the context of a summary judgment. In *Blackmore v. Davis Oil Co.,* 671 P.2d 334, 337 (Wyo.1983), the court quoted from *Forbes Company v. MacNeel,* 382 P.2d 56 (Wyo.1963), and said:

"* * * [T]hat an inference which is contrary to direct testimony is insufficient to support a finding that a genuine issue of material fact exists: * * *."

The court went on to say that, even if it were to assume inferences favorable to the appellants in that case, those inferences could not stand against uncontroverted tes-

timony to the contrary. This concept was applied in *Reed v. Getter Trucking, Inc.,* 735 P.2d 1370 (Wyo.1987). It also had been invoked in *Spurlock v. Ely,* 707 P.2d 188 (Wyo.1985). In *Kobielusz,* 701 P.2d at 560–61, the court recognized the *Blackmore* case, but appeared to temper it with the following language:

> " * * * Although we have held inferences contrary to direct testimony *may not ordinarily* support a finding, *Blackmore v. Davis Oil Company,* Wyo., 671 P.2d 334 (1983); *Forbes Company v. MacNeel,* Wyo., 382 P.2d 56 (1963), that determination usually depends upon the quality of evidence creating the inference and the direct testimony."

In *Matter of Estate of Roosa,* 753 P.2d 1028 (Wyo.1988), the court attempted to resolve any apparent conflict between *Blackmore* and *Kobielusz,* noting the following additional language from *Kobielusz,* 701 P.2d at 562–63:

> " 'A reasonable inference is as truly evidence as the matter on which it is based, and is not a mere presumption or guess; appropriate inferences from proved facts are not a low order of evidence, but are just as valid as evidence as statements of eye-witnesses and are to be weighed by the jury along with the other evidence before it and may be strong enough to outweigh positive and direct oral statements. Whether or not they should be permitted to overcome positive and direct testimony depends, in every case, on the relative strength of the one or the other.' 32A C.J.S. Evidence § 1044."

In *Roosa,* the court considered the concept of sequential inferences in the context of summary judgment and adopted the Wigmore view (1A Wigmore, Evidence § 41 (Tiller's rev. 1983)) to the effect that an inference may be drawn from a fact that itself was inferred when the circumstances demonstrate no other reasonable theory or alternative inference with respect to the initial fact. Perhaps this is simply another way of comparing the quality of the inferred fact with the direct testimony. *Kobielusz.*

■ Turning then to the matters upon which Appellants rely, it is not possible, under the most favorable view, to infer that ARCO had retained or exercised control over the operation of the Black Thunder Mine from the part of the record demonstrating that Sharon Fiscus was an employee of ARCO. Furthermore, that inference would have to be based upon Fiscus' status as an employee of ARCO, and her claim then would be barred by the workers' compensation provisions, which is contrary to the law of this case. In *Fiscus,* 742 P.2d 198, we held to the contrary. The retention of an overriding royalty interest in the Black Thunder Mine and the continual reference by the Bureau of Land Management to the leases being jointly held by ARCO and Thunder Basin does not lend itself to an inference of a retention of a right of control or the exercise of control over the activities of Thunder Basin. Those are nothing more than indicia of ownership, and that is insufficient under prior cases to justify the inference of a duty. Much the same is true of the contention that ARCO pays all taxes on the mine. The record clearly demonstrates the unified accounting procedures which were employed by these corporations, and those do not infringe upon their separate identity. Visits by ARCO officials to the Black Thunder Mine could be for the purpose of supervising operations, but there are many other valid purposes for those visits so that the inference of supervision definitely is not exclusive. Certainly, the same thing is true with respect to the attendance of ARCO officials at safety meetings. Drawing the inference from these latter two circumstances, retention of the right of control or the exercise of control which, Appellants contend, is nothing more than speculation. Appellants' argument perhaps serves to justify the rule of *Blackmore.* In any event, the quality of such inferences does not structure a genuine issue of material fact, in light of the direct evidence relating to the assumption of affirmative duties with respect to safety. The same is true of the fact that the president of another subsidiary forwarded a memorandum to Thunder Basin which rec-

ommended the use of seat belts by its employees. With respect to ARCO reviewing the qualifications of and interviewing safety directors before they were hired by Thunder Basin, the sequential inference concept is definitely pertinent. One would have to infer from those facts that ARCO retained the right to hire, and then would have to infer from the retained right to hire the retention of the right to exercise control over these individuals in their work for Thunder Basin. Finally, the mere availability of representatives of ARCO to assist with Thunder Basin's training program does not lead to an inference of the retention of right of control over the safety operations of Thunder Basin. We agree with the trial court that the circumstances relied upon by Appellants were insufficient to structure any genuine issue of material fact with respect to ARCO's assumption of some independent legal duty.

We turn then to the fact of ownership of the scraper. The only evidence that Appellants rely upon is the initial purchase of the scraper by ARCO. Appellants rely upon a transfer by bill of sale to ARCO. The record demonstrates that the scraper was employed exclusively at the Black Thunder Mine, was maintained by Thunder Basin, was in its exclusive control, and was, in fact, amortized as a part of Thunder Basin's expenses. Such equipment is not titled in Wyoming and, thus, there is no certain inference that it still was owned by ARCO at the time of the accident. Even so, the mere possession of title does not manifest the retention of, or the exercise of, any right of control over this instrumentality. Consequently, any inference to be drawn from the ownership of the scraper does not serve to structure a genuine issue of material fact.

In light of this record, there is no justification for a favorable inference to be drawn on behalf of Appellants to structure a genuine issue of material fact with respect to any legal duty owed by ARCO to Appellants. The trial court correctly discerned the essence of this case and properly entered a summary judgment in favor of ARCO. The judgment of the district court is affirmed.