**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KATHERINE K. MORGAN, as wrongful
death representative of the deceased
person, David P. Morgan,

      Plaintiff - Appellant,

v.

BAKER HUGHES INCORPORATED, a
Delaware corporation,

      Defendant - Appellee.

No. 18-8076

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 1:14-CV-00210-SWS)**
_____

Earl Landers Vickery, Vickery & Shepherd, LLP, Houston, Texas (Arnold Anderson
Vickery, Vickery & Shepherd, LLP, Houston, Texas; Frederick J. Harrison, Frederick J.
Harrison, PC, Cheyenne, Wyoming, on the briefs), for Plaintiff-Appellant.

Stephen P. Laitinen, Larson King, LLP, St. Paul, Minnesota (Stephenson D. Emery,
Williams, Porter, Day & Neville, PC, Casper, Wyoming; Mark A. Solheim, Larson King,
LLP, St. Paul, Minnesota, on the briefs), for Defendant-Appellee.
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Katherine Morgan, as wrongful death representative of her husband, David Morgan, brought direct negligence liability claims against Baker Hughes Incorporated ("Baker Hughes") for the acts of its subsidiary, Baker Petrolite Incorporated ("Baker Petrolite"). This appeal requires us to interpret Wyoming law regarding the level of control necessary to hold a parent corporation liable in direct negligence for the acts of its subsidiary. We conclude that Wyoming law on this issue is consistent with the Restatement (Second) of Torts § 414 and its commentary. Accordingly, we hold that the district court correctly instructed the jury with respect to the relevant legal standard and did not err in making various decisions Morgan challenges on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On August 16, 2012, David Morgan was crushed to death by a heavy chemical tote while operating a forklift at his place of employment, a warehouse in Casper, Wyoming. The warehouse was owned by Baker Petrolite, a subsidiary of Baker Hughes. Following the fatal accident, David Morgan's widow, Katherine Morgan, sued Baker Hughes, claiming that its negligent control of safety operations at the Casper warehouse caused her husband's death.

There have been two trials in this case. At the close of Morgan's evidence in the first trial, Baker Hughes moved for judgment as a matter of law. The district court granted Baker Hughes' motion. We reversed on appeal, holding that Morgan had presented sufficient evidence for a reasonable jury to conclude that Baker

2

Hughes was liable for David Morgan's death. Morgan v. Baker Hughes Inc., 728 F. App'x 850, 854, 858 (10th Cir. 2018) (unpublished) ("Morgan I").

In so doing, we interpreted Wyoming law on the liability of parent corporations for the acts of their subsidiaries. Under Wyoming law, "a parent company can only be held liable for the acts of its subsidiary where it assumed some independent legal duty by retaining or exercising control over some aspect of the operation of a subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries." Id. at 854. We cited Loredo v. Solvay America, Inc., 212 P.3d 614 (Wyo. 2009), as setting forth the requisite level of control. Morgan I, 728 F. App'x at 854. In Loredo, the Wyoming Supreme Court held that for a parent to escape liability for the acts of its subsidiary, the subsidiary must be "entirely free to do the work its own way." 212 P.3d at 622. Applying this test, we phrased the question presented in Morgan I as "whether the evidence presented at trial, viewed in the light most favorable to plaintiff, is reasonably susceptible to the inference that Baker Hughes controlled operations at the Casper warehouse 'to such a degree that it directed how' forklift safety 'should or should not be done.'" 728 F. App'x at 854 (quoting Loredo, 212 P.3d at 624). Because we concluded that Morgan's evidence was sufficient to support such an inference, we reversed the district court's judgment and remanded for further proceedings. Id. at 858.

The second trial ensued. This time, Morgan moved for judgment as a matter of law. The district court denied the motion, and the jury returned a verdict in favor of Baker Hughes. However, before submitting the case to the jury, the court rejected

3

Morgan's proposed jury instructions and overruled her objections to the court's instructions. Morgan timely appealed these decisions and moved to certify the controlling question to the Wyoming Supreme Court.

## II

"Wyoming has explicitly rejected any doctrine of respondeat superior resulting in liability on the part of a parent corporation for acts of its subsidiary." Id. at 854 (quoting Loredo, 212 P.3d at 620). "Instead, a parent company can only be held liable for the acts of its subsidiary where it assumed some independent legal duty by retaining or exercising control over some aspect of the operation of the subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries." Id. Merely advising a subsidiary on safety matters is not enough. See Fiscus v. Atl. Richfield, 773 P.2d 158, 162-63 (Wyo. 1989). "General, generic," and optional guidelines are therefore insufficient to establish liability. Loredo, 212 P.3d at 625. In contrast, a parent corporation does not escape liability under this standard unless the subsidiary is "entirely free to do the work its own way." Id. at 622.

Several issues presented in this appeal turn on the same inquiry. As Morgan puts it, "[t]he disposition of this case depends on whether the test for direct negligence is the same in the parent-subsidiary context as in the independent contractor context" under Wyoming law. Morgan argues that Merit Energy Co. v. Horr, 366 P.3d 489 (Wyo. 2016), provides the correct standard, taken from § 414 of the Restatement (Second) of Torts. Baker Hughes argues that Loredo provides the

4

correct standard. We conclude that both <u>Horr</u> and <u>Loredo</u> announce the same requisite level of control, drawn from § 414.

**A**

As we recognized in <u>Morgan I</u>, the Wyoming Supreme Court has held the "requirement that the parent assume some independent legal duty by retaining or exercising control over some aspect of the operation of a subsidiary" is "[e]ssentially . . . the same test that is involved in considering an owner's liability to the employee of a contractor." 728 F. App'x at 854 n.1 (quoting <u>Fiscus</u>, 773 P.2d at 160). Accordingly, independent contractor cases provide guidance in assessing the level of control necessary for a parent corporation to be held liable for the acts of its subsidiary.

In <u>Jones v. Chevron, U.S.A., Inc.</u>, 718 P.2d 890 (Wyo. 1986), an independent contractor case, the Wyoming Supreme Court explained that § 414 provides "[t]he link between control and owner liability." <u>Id.</u> at 895. Interpreting that section, the court held that the owner of a work site owes a duty of reasonable care to the employee of an independent contractor if the owner "[1] retains the right to direct the manner of an independent contractor's performance, or [2] assumes affirmative duties with respect to safety." <u>Id.</u> at 896. The court recognized that under this standard, "[a]n owner does not have to retain a great deal of control over the work to be liable for an employee's harm under § 414." <u>Id.</u> at 895. Merely retaining the power to direct how work shall be done, or conversely forbidding that it be done in a likely dangerous manner, is sufficient. <u>Id.</u> at 895 n.3.

5

Twenty-three years later, the Wyoming Supreme Court decided <u>Loredo</u>, a parent-subsidiary case. The court confirmed that it had long "adopted as the legal standard for the liability of a parent corporation the requirement that the parent assume some independent legal duty by retaining or exercising control over some aspect of the operation of a subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries." 212 P.3d at 619 (quoting <u>Fiscus</u>, 773 P.2d at 160). It emphasized that this test is essentially the same as that articulated in <u>Jones</u> because a parent corporation is analogous to the owner of a work site. <u>Id.</u> at 619, 623. Quoting comment (c) to § 414, the court stated that to be held liable in direct negligence, the employer or work-site owner must "ret[ain] a right of supervision" such that "the contractor is not entirely free to do the work his own way." <u>Id.</u> at 623.

After discussing these principles, the court announced the following test:

> The test in finding whether Solvay America assumed an affirmative duty is not whether it operated <u>any</u> control in the mine, but whether Solvay America controlled the aspect of the mining operation that was involved in the incident that resulted in Plaintiff's injuries to such a degree that it directed how that aspect should or should not be done.

<u>Id.</u> at 624. The court determined that the evidence adduced was insufficient to create an inference of control by Solvay America; rather, it suggested that Solvay acted merely in an "advisory role" over its subsidiary. <u>Id.</u> at 625.

After <u>Loredo</u>, the Wyoming Supreme Court decided <u>Horr</u>, another independent contractor case. 366 P.3d at 489. The plaintiff in that case had proceeded under both respondeat superior and direct negligence theories of liability. <u>Id</u>. at 496.

6

Accordingly, the Wyoming Supreme Court thoroughly examined Wyoming law concerning the level of control necessary to sustain each form of liability.  Id. at 494-97.  The court recognized that in Jones, it had adopted the Restatement (Second) of Torts to hold, generally, that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."  Id. at 494 (citing Jones, 718 P.2d at 894 n.1).  It recited two exceptions to this general rule:  (1) respondeat superior liability, and (2) direct negligence liability under "§ 414 of the Restatement, which deals with the direct liability of an employer in connection with the work to be done."  Id. at 494-95.  Regarding the latter, the court observed that § 414 provides the familiar rule that an employer of an independent contractor may be held directly liable for the independent contractor's negligence if the employer "control[s] any part of the work" negligently performed by the independent contractor that caused physical harm to an employee.  Id. (citing Jones, 718 P.2d at 893-94).

The court looked to comments (a) and (c) to § 414 as "helpful guidance" in determining the requisite level of control.  Id. at 494-95.  Comment (a) states that the level of control necessary for direct negligence liability is less than that required for respondeat superior liability, and it is enough that an employer "retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others."  Id. (quoting Restatement (Second) of Torts § 414, cmt. a).  Comment (c) states that the level of control "must be such a retention of a right of supervision that the contractor is not entirely free to

7

do the work in his own way." Id. (quoting Restatement (Second) Torts § 414 cmt. c). After citing these two comments, Jones, and Loredo, the court affirmed that Wyoming's test for direct negligence liability is "[b]ased upon § 414 and its commentary." Id. at 495.

Turning to the exception based on respondeat superior liability, the Horr court characterized it as fundamentally premised on the "right to control the means and manner of work." Id. at 496 (quotation omitted). Under this exception, "the employer is strictly liable for the negligence of the supposed independent contractor, who turns out to be a servant employee due to the greater degree of control exercised." Id. at 495-96. Although "[t]he right to control is a requirement of the master-servant relationship," its absence "is a prerequisite of an independent contractor relationship." Id. at 496. Applying these observations, the court rejected the employer's challenge to the trial court's jury instructions, concluding that the instructions "parallel[ed]" § 414 and the court's precedent and were therefore not erroneous. Id. at 497-98.

**B**

In light of the foregoing, we agree with Morgan that the correct test under Wyoming law for direct negligence in either the parent-subsidiary or independent contractor context is based on § 414 and its commentary. The Wyoming Supreme Court has emphasized for thirty years that the two tests applied in each context are "[e]ssentially . . . the same." Fiscus, 773 P.2d at 160 (citing Jones, 718 P.2d 890); see Loredo, 212 P.3d at 619 (quoting Fiscus, 773 P.2d at 160); Horr, 366 P.3d at 495

8

(citing Jones and Loredo for the same test).[1] It has explicitly "analogized" parent corporations to the work-site owners in independent contractor cases. Loredo, 212 P.3d at 623. Wyoming parent-subsidiary cases cite Wyoming independent contractor cases, and vice versa, in applying the same test. See Fiscus, 773 P.2d at 160 (citing Jones, 718 P.2d 890); Horr, 366 P.3d at 495 (citing Loredo, 212 P.3d at 623, 626). And most recently in Horr, the Wyoming Supreme Court cited both an independent contractor case (Jones) and a parent-subsidiary case (Loredo) for the rule that the requisite level of control necessary to establish direct negligence liability is "[b]ased upon § 414 and its commentary." 366 P.3d at 495 (citing Jones, 718 P.2d at 896; Loredo, 212 P.3d at 623, 626). The court has therefore given every indication that it applies the same test and same level-of-control analysis in both its independent contractor and parent-subsidiary lines of cases. We are aware of no indication to the contrary, and Baker Hughes identifies none.

We disagree, however, with Morgan's insistence that Horr and Loredo are irreconcilable and that Horr, not Loredo, controls this case. Morgan argues that Loredo is incorrectly decided because it applies two inconsistent levels of control. At one point, the court states that the relevant standard is "whether [the parent] controlled the aspect of the mining operation that was involved in the incident that resulted in Plaintiff's injuries to such a degree that it directed how that aspect should

---

[1] The two tests appear to be "essentially"—not "exactly"—the same only insofar as Wyoming has rejected respondeat superior liability on the part of parent corporations for the acts of their subsidiaries. See Fiscus, 773 P.2d at 160.

9

or should not be done." 212 P.3d at 624 (emphasis added). Elsewhere, the court cites language from comment (c) to § 414 as the relevant standard: "there must be such a retention of a right of supervision that the [subsidiary] is not entirely free to do the work in its own way." Id. at 623 (quotation omitted, emphasis added). Because Morgan maintains that the correct standard is drawn from § 414 and its commentary, she argues that the "not entirely free" language is valid, but the "should or should not be done" language is not. This latter statement, according to Morgan, comes from Jones and is not about the requisite level of control for liability, but rather the manner of control.

As discussed above, we agree with Morgan that the correct level-of-control test is stated in Horr and is based on § 414 and its commentary. But we do not agree that Loredo's "should or should not be done" standard is inconsistent with § 414's test. In Loredo, the court cites two cases for the "should or should not be done" language. See 212 P.3d at 624 (citing Fiscus, 773 P.2d at 160; Wayts v. Peter Kiewit Sons, Inc., 936 F.2d 584 (10th Cir. 1991), 1991 WL 114736 (unpublished table decision)). And our decision in Wayts cites Fiscus for this language. 1991 WL 114736, at *1. Although that language does not appear in Fiscus, Wayts also includes a "see also" citation to Jones in support of the "should or should not be done" standard. Id. We agree with Morgan that Jones comes closest to using this phrase. As the Wyoming Supreme Court explained in Jones:

> [C]omment (a) to § 414 indicates that the owner can be
> liable even if he gives up enough control to make the

10

contractor an "independent contractor" under vicarious liability analysis.

". . . . If the employer reserves and exercises only the right to inspect the construction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject it to liability. . . .

On the other hand, if the employer retains the right to direct the manner of the independent contractor's performance, or assumes affirmative duties with respect to safety, the employer has retained sufficient control to be held liable if he exercises that control negligently."

718 P.2d at 895-96 (quotation and footnote omitted). This language reflects the Wyoming Supreme Court's interpretation of the appropriate direct negligence liability standard under § 414 comment (a). We interpret Loredo to base the "should or should not be done" standard on this language. Thus, contrary to Morgan's arguments, we conclude that the "should or should not be done" standard springs from § 414.

In sum, Loredo's "should or should not be done" language reflects the Wyoming Supreme Court's interpretation of comment (a) in Jones, and its "not entirely free" language is drawn directly from comment (c). We therefore conclude that Loredo applies the same level-of-control analysis applied in Horr.

### III

### A

As a threshold matter, Morgan seeks to certify the level-of-control question to the Wyoming Supreme Court. We consider motions for certification de novo. Pino

11

v. United States, 507 F.3d 1233, 1235 (10th Cir. 2007). The standards we apply in determining whether to grant a motion for certification stem from both state and federal law. Id. at 1236. Under Wyoming law, the Wyoming Supreme Court may answer certified questions that involve "a question of law which may be determinative of the cause then pending in the certifying court or agency and concerning which it appears there is no controlling precedent in the decision of the supreme court." Wyo. R. App. P. 11.01. Under our own jurisprudence, we will not certify every "arguably unsettled question of state law [that] comes across our desks." Pino, 507 F.3d at 1236. If a "reasonably clear and principled course" is available, we follow it ourselves. Id. Certification is appropriate, however, if "the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." Id. Throughout this inquiry, we are mindful that the "judicial policy of a state should be decided when possible by state, not federal, courts." Id. (citing Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)).

For the reasons explained above, we conclude that the Wyoming Supreme Court has provided clear guidance on how to answer the level-of-control question pending before us. This question is not novel; the Wyoming Supreme Court has addressed the issue since the 1980s. See, e.g., Fiscus, 773 P.2d at 160. And it has provided controlling precedent, most recently in Horr, explaining the correct standard to be applied in addressing this question. Because the decisions of the Wyoming Supreme Court chart a "reasonably clear and principled course" for us to follow,

12

Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988), we deny Morgan's motion for certification.

**B**

Morgan also challenges the district court's denial of her motion for judgment as a matter of law ("JMOL"). We review the denial of a motion for JMOL de novo, "sitting in the same position as the trial court." Phillips v. Hillcrest Medical Center, 244 F.3d 790, 796 (10th Cir. 2001). "A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 771 (10th Cir. 2011) (quotation omitted). To challenge the sufficiency of evidence on appeal, the challenging party must comply with the requirements of Fed. R. Civ. P. 50. Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399 (2006). Rule 50(a) provides procedural requirements for challenging the sufficiency of evidence pre-verdict; Rule 50(b) provides procedural requirements for renewing a sufficiency-of-the-evidence challenge post-verdict. Id. at 399-400.

"[T]he precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to [JMOL]—cannot be appealed unless that motion is renewed pursuant to Rule 50(b)." Id. at 404. The purpose of this rule is that "[d]etermination of whether a new trial should be granted or judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Cone v. W.

13

Va. Pulp & Paper Co., 330 U.S. 212, 216 (1947). "[F]or this Court to entertain a sufficiency-of-the-evidence challenge, [a party] must have properly presented such a challenge to the district court first in a pre[-]verdict Rule 50(a) motion and then in a renewed Rule 50(b) motion following the verdict." Home Loan Inv. Co. v. St. Paul Mercury Ins. Co., 827 F.3d 1256, 1266 (10th Cir. 2016).

In her pre-verdict Rule 50(a) motion, Morgan sought JMOL "on the issue of control and, thus, liability of the parent company," Baker Hughes. Specifically, she argued that Baker Hughes' forklift safety guidelines were sufficient evidence that Baker Petrolite "had no room to develop its own safety policy," and thus under Horr, she was entitled to judgment as a matter of law. She pursues the same argument in this appeal. Because Morgan did not renew this sufficiency-of-the-evidence challenge post-verdict, she has failed to preserve that issue for appeal. Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1250 n.1 (10th Cir. 2013). We therefore do not address it.

## C

Morgan also argues the district court erred by refusing to adopt her proposed jury instructions on the direct negligence liability test. "We review a district court's decision to give a particular jury instruction for abuse of discretion, but we review de novo legal objections to the jury instructions." Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154 (10th Cir. 2012) (quotation omitted).

The district court attempted to hew as closely as possible to our formulation of the control inquiry in Morgan I. In relevant part, Jury Instruction No. 11 provides:

14

For a parent corporation to be liable in a negligence action by a subsidiary's employee, the parent corporation must have assumed some independent legal duty by retaining or exercising control over some aspect of the operation of a subsidiary corporation which was involved in the incident resulting in the plaintiff's injuries or damages. The retention or exercise of control over the particular aspect of the subsidiary's operation must have been to such a degree that the parent corporation directed how that aspect should or should not be done, so that the subsidiary was not entirely free to do the work its own way.

The question ultimately put to the jury as Question No. 1 on the special verdict form was:

On August 16, 2012, did Baker Hughes Incorporated retain or exercise control over the operations at Baker Petrolite's Casper, Wyoming warehouse to such a degree that it directed how forklift safety should or should not be done?

These instructions track closely our formulation of the proper inquiry in Morgan I. See 728 F. App'x at 854. In that case, we considered both parent-subsidiary and independent contractor cases in determining the correct level-of-control test under Wyoming law, although we drew on language from Loredo to explicate the test. Id. For the reasons explained in Part II, supra, the level-of-control test announced by the Wyoming Supreme Court in Loredo is the same as the test announced in Horr. In fashioning its jury instructions, the district court closely adhered to our discussion in Morgan I, which accurately follows Loredo and applies the same standard as Horr. The district court's instructions therefore correctly state Wyoming law.

15

Morgan's main contention with the trial court's instructions is that, in her view, they instruct the jury on respondeat superior liability, not direct negligence liability. Standing alone, Question No. 1 is poorly phrased because it makes "the operations at Baker Petrolite's . . . warehouse," not "forklift safety," the object of the verb phrase. A more precise statement of the relevant legal question would be whether Baker Hughes retained or exercised control over the forklift safety operations at the warehouse that led to David Morgan's death. But "[w]hen reviewing a challenge to jury instructions, we consider the instructions as a whole and presume the jury followed those instructions." See United States v. Hatatley, 130 F.3d 1399, 1405 (10th Cir. 1997). The district court's inartful sentence construction does not rise to the level of legal error because Instruction No. 11 correctly articulates the required level of control to find a parent corporation directly liable in negligence for the acts of its subsidiary. See Lederman, 685 F.3d at 1155 (explaining that jury instructions need not be "flawless"). Considered as a whole, the district court's instructions accurately state Wyoming law, and we presume the jury followed the court's instructions, including Instruction No. 11, in answering Question No. 1.

Finally, Morgan argues that the jury instructions were "slanted impermissibly away from direct negligence" because they did not contain particular language from comment (a) to § 414 of the Restatement, specifically: "An owner does not have to retain a great deal of control over the work to be liable for an employee's harm under § 414." We do not agree that the omission of this phrase renders the jury instructions

16

a misstatement of Wyoming law.  The instructions include the relevant language from Wyoming Supreme Court case law interpreting comments (a) and (c) indicating the requisite level of control to hold a parent corporation liable in direct negligence for the acts of its subsidiary.  Although Morgan may be correct that § 414 reflects the important consideration that the requisite level of control for liability is lower for direct negligence than it is for respondeat superior, an explicit statement to that effect is not critical to determining whether the requirements for direct negligence liability itself are met.

Accordingly, we hold that the district court correctly stated Wyoming law in its jury instructions, and it did not abuse its discretion in crafting its own (correct) formulation of the instructions rather than adopting Morgan's proposed instructions.[2]

**IV**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**. Morgan's motion for certification is **DENIED**.

---

[2] Morgan also requests that in the event we reverse and remand this case, we review the district court's refusal to take judicial notice of a letter she sought to submit into evidence at trial.  Because we affirm the ruling of the district court, we do not reach this question.

17